22 A.3d 886

**Lamar Cornelius HARRIS**

v.

**STATE of Maryland.**

**No. 79, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 24, 2011.

302

Brian M. Saccenti, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

Petitioner, Lamar Cornelius Harris, has been charged with first degree murder and conspiracy to commit first degree murder emanating from the death of a correctional officer on July 25, 2006, at the Maryland House of Corrections, in Jessup, Maryland.[1] To date, court proceedings have stalled in

---

1. Petitioner was initially charged by indictment on August 18, 2006 in Case No. 02–K–06–001925, which was *nolle prossed* by the State on

the preliminary stages due to disagreement about the propriety of the trial judge's pretrial rulings ordering discovery of certain records and testimony pertaining to Harris's court-ordered competency evaluation and subsequent in-patient treatment at Clifton T. Perkins Hospital Center ("Perkins Hospital"). Petitioner ultimately seeks appellate review on the merits regarding the trial judge's denial of Harris's motion for a protective order resulting from service of a subpoena on one of Harris's treating physicians as well as service of a subpoena *duces tecum* on Perkins Hospital. Because we conclude that the discovery orders are not appealable at this time, we do not address the merits of Harris's challenges to those orders.

## FACTS AND PROCEDURAL HISTORY

On May 23, 2008, Harris, through counsel, filed a "Motion for Competency Evaluation," requesting that the Circuit Court order an inpatient evaluation to be conducted at Perkins Hospital.[2] Thereafter, the trial judge ordered Harris's commitment to the Maryland Department of Health and Mental Hygiene ("DHMH") for purposes of conducting an examination as to his competency to stand trial and that he be confined within the Maryland Department of Corrections, or at a facility determined by DHMH, for the purposes of the evaluation. DHMH designated Perkins Hospital.[3]

---

March 31, 2008. Subsequently, Petitioner was recharged by indictment in Case No. 02–K–08–000647 on one count of first degree murder, including related offenses, and one count of conspiracy.

2. In *Ray v. State,* 410 Md. 384, 978 A.2d 736 (2009), we noted that Clifton T. Perkins Hospital Center ("Perkins Hospital") is authorized by "[s]ection 10–406 of the Maryland Health–General Article, Maryland Code (1982, 2005 Repl.Vol.)" to "receive[ ] patients requiring psychiatric evaluation who have been accused of felonies and have raised the Not Criminally Responsible (NCR) defense and/or their Competency to Stand Trial is in question . . . ." *Ray,* 410 Md. at 387–88, 978 A.2d at 737–38, fn. 2 (internal citations omitted).

3. A trial docket entry indicates that Harris was "committed" to the Department of Health and Mental Hygiene ("DHMH") on June 2, 2008 for examination of his competency.

On June 26, 2008, Harris, through counsel, filed a "Motion for Counsel to be Present During Competency Evaluation and to Maintain all Recordings of the Evaluation Process." DHMH opposed the motion averring that the presence of attorneys would compromise the evaluation process and furthermore that there was no danger to the defendant of having potentially incriminating statements used against him because such statements would not be admissible at trial to prove the criminal offense or enhance a sentence.[4] Defense counsel then filed a motion to stay the competency evaluation pending a ruling on its motion to allow counsel to be present during the evaluation. The stay was granted. Apparently, unaware of the stay, the Director of Pretrial Services at Perkins Hospital sent a letter to the trial judge on July 3rd requesting an extension of 30 days to complete the evaluation. That request was granted.

One week later, prior to the performance of the competency evaluation and prior to the scheduled hearing on defense counsel's motion to permit counsel to be present during Harris's evaluation, defense counsel moved to withdraw the motion for a competency evaluation and to rescind the order for DHMH to conduct the evaluation as well as withdraw the allegation of incompetence.[5] The trial judge considered these motions at a hearing on July 15, 2008. Defense counsel explained to the trial judge that according to the expert opinion of a forensic neuropsychiatrist, Harris was not competent to stand trial and, therefore, in counsel's view the evaluation by DHMH was no longer necessary. At that time, the trial judge did not permit Harris to withdraw his request for a

---

4. DHMH was not a party to the criminal case when it filed a motion in the trial court opposing Harris's motion to allow counsel to be present during Harris's competency evaluation.

5. On July 10, 2008, Petitioner filed an "Averment of Incompetency to Stand Trial" and a "Motion to Withdraw Motion for Competency Evaluation and Request to Rescind Order Directing the Department of Health and Mental Hygiene to Conduct a Competency Evaluation of Defendant." As noted in this opinion *supra*, these motions were denied.

competency evaluation, thus the standing order for DHMH to conduct an evaluation was not rescinded. The trial judge also concluded that Harris was not entitled to have counsel present during the competency evaluation because it was not a critical stage of the proceedings, however, the trial judge ordered that Perkins Hospital should make an audio recording of the entire evaluation and disclose the recording to counsel unless the court ordered otherwise.

Subsequently, Harris submitted to a competency evaluation conducted by Perkins Hospital. By report dated August 27, 2008 and filed September 4, 2008, Dr. Danielle Robinson opined that Harris was not competent to stand trial.[6] The court then scheduled November 20 and 21, 2008 for a competency hearing. On October 7, 2008, the court received a letter from Perkins Hospital indicating that Harris's mental state had shown improvement since the first competency evaluation report, consequently, the court ordered that, prior to the November competency hearing dates, DHMH should conduct "additional mental health evaluations as may be necessary to enable the Court to exercise its duty to determine the competency of the Defendant."

Defense counsel moved, shortly thereafter, for the Circuit Court to issue a "Subpoena to Produce Tangible Evidence" for service on the "Custodian of Records" at Perkins Hospital to disclose to the defense "the complete file of the testing, examination, and 'raw data'" that supported the Psychology Consultation Report prepared by Dr. Cowan, a physician at Perkins Hospital, which was used as part of Dr. Robinson's first competency evaluation. Contemporaneously, Petitioner

---

6. In a letter to the trial judge dated August 27, 2008, Dr. Angela Kim–Lee, Director of Pretrial Services at Clifton T. Perkins Hospital Center ("Perkins Hospital") also requested that the Circuit Court order Harris committed to DHMH for in-patient care and treatment enclosing such a draft order with the letter. It is not clear that the trial judge executed that order, but Harris did remain at Perkins Hospital at least through the final competency evaluation conducted in November 2008. Both parties refer to Harris having been "admitted" to Perkins for treatment, and he was indisputably "treated" by physicians there. Currently, Harris is incarcerated at North Branch Correctional Institution.

filed a second "Motion for Subpoena to Produce Tangible Evidence" requesting his "complete treatment file." On October 29, 2008, the State obtained a subpoena requiring Dr. Sameer Patel, Harris's treating physician at Perkins Hospital, to appear and testify at the November competency hearing.[7] On November 7, 2008, Defense counsel filed a motion for protective order seeking to quash the State's subpoena for Dr. Patel. The State then obtained and served a subpoena *duces tecum* on Perkins Hospital requiring the custodian of the institution's records to release all records, including treatment records, relating to Harris from the date of his admittance on July 24, 2008 through the motion date. There is no indication in the record that defense counsel filed a motion in opposition to the State's subpoena *duces tecum*.[8] A second competency evaluation report was filed with the trial court on November 14, 2008 averring that Harris remained not competent to stand trial. Thus, physicians at Perkins Hospital have determined Harris to be incompetent, however, no competency hearing has been held by the court.

The trial court held a hearing on November 18, 2008 to address the outstanding motions with regard to competency. The trial judge ordered that the material requested in Petitioner's subpoena issued to Perkins Hospital should be furnished to the Petitioner's qualified expert as well as to the State, pursuant to its own subpoena *duces tecum*. Defense counsel then argued that only the defense was authorized to obtain the treatment records generated as a result of Harris's admission to Perkins Hospital. Defense counsel challenged

---

7. Neither party contests that Dr. Patel was Harris's "treating physician" while he was at Perkins Hospital. Defense counsel contends that the patient-psychiatrist privilege, codified at Md.Code (2006 Repl.Vol.), § 9–109 of the Courts and Judicial Proceedings Article ("C.J.P."), applies to the treatment materials and physician testimony, even though it does not apply to the competency evaluation records. The trial judge found that all of the records were intertwined and necessary for consideration of the competency issue.

8. Defense counsel, however, did object on the record, at a pretrial hearing of November 18, 2008, to the State's subpoena *duces tecum* on the grounds that the treatment records were privileged.

the State's request to view treatment records, asserting Harris's patient-psychiatrist privilege in the records. The trial judge ruled that because Harris had put his mental competency in issue he had no privilege to maintain confidentiality in any of the medical records made for purposes of the competency evaluation or, otherwise, for treatment, and so the records should be disclosed to the defense and to the State.[9]

Thus, the trial judge rejected Harris's request for a protective order and ordered that Dr. Patel appear at the competency hearing, granted Harris's motions for production of tangible evidence, and explained why Perkins Hospital must comply with the State's subpoena *duces tecum*. DHMH immediately

---

9. In ruling on the discovery orders, the trial judge reasoned that

[t]he entirety of the [competency] report is heavily depended (sic) upon his course of activities as Perkins. All the opinions expressed are ... dependent upon not just the isolated evaluation of the psychologist doing the competency evaluation, but they're intertwined in a way that cannot be severed out with his course of treatment, with his course of conduct at Perkins.

And if the competency of the Defendant is going to be litigated in this Court, then it is impossible to extricate his medical situation at Perkins, his medical records at Perkins, from the opinions that are going to be rendered at least by the folks at Perkins.

Now there are also, as I recall, experts that might be testifying for the defense that have no connection to Perkins and that may be so, but at the moment I find that it would be hard to imagine that the witnesses from Perkins wouldn't be called as witnesses in this case if for no other reason than the Court would want to hear from them.

And I think that it would be impossible to say that their opinions would be somehow surgically severed from his records.... Mr. Harris' mental condition and derivatively his physical condition is an issue that this Court has to resolve.

[Defendant] has no privilege under the current situation to any of the medical records at Perkins, whether they be directly or indirectly associated with his evaluation or his treatment.

And the Court is going to find that they should be disclosed to both parties. And ultimately if they're used in the context of the competency hearing, they may or may not be used in context of other proceedings in this case.

And I don't think that either party is entitled to use factual information in a trial, in a competency matter, in a sanity situation, or in a sentencing procedure, that the other party hasn't had reasonable discovery of.

So for that reason, if the materials are requested by either party they should be disclosed and provided in their entirety.

released to the Assistant State's Attorney involved in the case and to the defense counsel boxes containing copies of Harris's medical records from Perkins Hospital.[10] Subsequently, the trial judge granted the State's motion for a postponement of the competency hearing in order to allow time to review the records. Approximately two weeks later, defense counsel moved to stay the trial judge's denial of the motion for a protective order and the trial judge's ruling to disclose Harris's medical records to the State, as well as noting an appeal to the Court of Special Appeals. The trial judge granted the stay on December 11, 2008 and ordered that "to the extent that the State has not already reviewed or discussed these records, they shall refrain from doing so until further order of the Court." [11]

In an unreported opinion, the Court of Special Appeals dismissed Harris's appeal. That court held that the challenged orders were interlocutory discovery orders and therefore not appealable, final orders; and, moreover the case did not merit application of the collateral order doctrine as an exception to the final judgment rule. Defense counsel filed a motion for reconsideration suggesting that the intermediate appellate court's holding was defective because it did not address the potential application of the *Perlman* doctrine to Harris's case. *See Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).[12] The Court of Special Appeals

---

**10.** The Assistant Attorney General who was representing the interests of DHMH at the pre-trial proceedings told the court that the records released to both parties contained "the entire medical record" but that the "record was developed primarily in connection with mental health services."

**11.** The State's Attorney had an opportunity to review the disclosed Perkins records from November 18, 2008 until December 11, 2008 because the Assistant Attorney General representing DHMH brought the records to the hearing and immediately delivered copies to both the defense and to the State upon the trial judge's ruling.

**12.** The *Perlman* doctrine, as discussed *infra,* describes a limited scenario whereby interlocutory discovery orders are immediately appealable by a privilege holder because discovery is directed to a disinterested third-party who lacks "sufficient stake in the proceeding to risk con-

declined Harris's motion to reconsider and therefore made no comment on the application of *Perlman* to this case.

We granted certiorari, *Harris v. State,* 415 Md. 607, 4 A.3d 512 (2010), to answer the following consolidated, reworded question:

> Were the trial court's interlocutory orders authorizing disclosure of treatment records and testimony by the treating physician that are allegedly protected by the patient-therapist privilege immediately appealable under the collateral order doctrine, or, if not, should this Court adopt the exception to the final judgment requirement for appealability recognized by the United States Supreme Court in *Perlman v. U.S.,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), and if so, does that doctrine apply here?

The orders that Petitioner submits that warrant appellate review are: (1) the trial judge's order denying Petitioner's "Motion for Protective Order" through which Petitioner sought to preclude the testimony of his treating physician, Dr. Patel, at his competency hearing; and (2) the trial judge's order permitting the State's subpoena for disclosure of Petitioner's medical records held by Perkins Hospital, including those made during the two competency evaluations and all treatment records.[13]

---

tempt by refusing compliance." *See Church of Scientology of California v. U.S.,* 506 U.S. 9, 18, 113 S.Ct. 447, 452, 121 L.Ed.2d 313, 322, n. 11 (1992) (applying the *Perlman* doctrine).

**13.** Defense counsel contends that the trial judge's orders are "markedly different from most discovery orders" because they are "more important than the usual discovery order [and,] they compelled disclosure of privileged material in a case where the State is seeking the death penalty and the available evidence shows the defendant is incompetent to stand trial[,]" and they were "completely separate from the merits in a way that most discovery orders are not" because they were "unrelated to Mr. Harris's guilt or innocence[.]" Notwithstanding these distinctions, the orders at issue are in fact discovery orders subject to all applicable case law.

**312**

## I.

■ Generally, in Maryland appellate jurisdiction may arise only after entry of a final judgment. *See* Md.Code (2006 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article ("C.J.P.") ("[A] party may appeal from a final judgment entered in a ... criminal case by a circuit court .... unless ... the right of appeal is expressly denied by law."). A final judgment is statutorily defined as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal ... may be taken." C.J.P. 12–101(f). The necessity of "finality," arises from "[t]he fundamental objective ... [which] is 'to prevent piecemeal appeals and to prevent the interruptions of ongoing judicial proceedings[.]' " *WSSC v. Bowen,* 410 Md. 287, 294–95, 978 A.2d 678, 683 (2009) (quoting *St. Mary's County v. Lacer,* 393 Md. 415, 424, 903 A.2d 378, 383–84 (2006)). This Court is responsible for defining the contours of the "finality" of a judgment, *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams,* 284 Md. 86, 91, 394 A.2d 801, 804 (1978), and accordingly we have stated that "to constitute a final judgment, a trial court's ruling 'must either decide and conclude the rights of the parties involved or deny a party the means to prosecute or defend rights and interests in the subject matter of the proceeding.' " *Schuele v. Case Handyman,* 412 Md. 555, 565, 989 A.2d 210, 216 (2010) (quoting *Nnoli v. Nnoli,* 389 Md. 315, 324, 884 A.2d 1215, 1219–20 (2005)).

■ In criminal cases, in particular, we have held that "no final judgment exists until after conviction and sentence has been determined, or in other words, when only the execution of the judgment remains." *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983) (citing *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956)). But, in *Sigma,* we noted that criminal defendants may be able to "appeal[ ] from certain pretrial or trial orders [where] the rights of the defendant would be lost or irreparably harmed if an appeal was not allowed until after trial." *Sigma,* 297 Md. at 666, 467 A.2d at 486.[14] "There are

---

14. In *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 467 A.2d 483 (1983), we summarized

. . . three well-identified, but infrequently sanctioned, limited exceptions to the final judgment rule which permit appellate review before a final judgment has been rendered." *Falik v. Hornage*, 413 Md. 163, 175, 991 A.2d 1234, 1241–42 (2010) (citing *St. Joseph Medical Center, Inc. v. Cardiac Surgery Associates, P.A.*, 392 Md. 75, 84, 896 A.2d 304, 309 (2006)). Those exceptions are: "appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602;[15] and appeals from interlocutory

---

[t]hose orders which courts have held that the defendant *can immediately appeal* include those involving: his right not to be subjected to double jeopardy, *see Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); . . . his right to file an in forma pauperis petition or to allege his right to bring a case as an indigent, *see Roberts v. United States District Court*, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950); *Pearlman*, 226 Md. 67, 172 A.2d 395; and his right to be adjudged competent to stand trial, *see Jolley v. State*, 282 Md. 353, 384 A.2d 91 (1978). Trial court orders that have been determined to be *interlocutory and nonappealable* include those involving the denial of: defendant's motion to dismiss the indictment because his right to a speedy trial had been violated, *see United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *Stewart*, 282 Md. 557, 386 A.2d 1206; defendant's motion concerning pretrial discovery orders, *see Dow Chemical Co. v. Taylor*, 519 F.2d 352 (6th Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975); *Kardy v. Shook*, 237 Md. 524, 207 A.2d 83 (1965); defendant's motion to suppress evidence, *see State v. Cooley*, 430 A.2d 789 (Del.1981); defendant's motion for a new trial because of the trial court's selection of venue after defendant's exercise of his right to removal, *see Lee [v. State ]*, 161 Md. 430, 157 A. 723 [ (1931) ]; and defendant's motion for new trial, *see State v. Asherman*, 180 Conn. 141, 429 A.2d 810 (1980). *Accord Warren [v. State of Maryland ]*, 281 Md. 179, 377 A.2d 1169 [ (1977) ] (appeal from an order for probation without judgment). . . .
*Sigma*, 297 Md. at 666–67, 467 A.2d at 486 (emphasis added) (some internal citations omitted).

**15.** Maryland Rule 2–602 provides:
 (a) Generally. Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
 (1) is not a final judgment;
 (2) does not terminate the action as to any of the claims or any of the parties; and

orders allowed under the common law collateral order doctrine." *Falik,* 413 Md. at 175–76, 991 A.2d at 1242 (quoting *St. Joseph,* 392 Md. at 84, 896 A.2d at 309).

 In Maryland, discovery orders "being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case in the trial court." *In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 592 (2003) (reversing the Court of Special Appeals's holding that a discovery order for a medical examination of the subject of a guardianship proceeding met the four requirements of the collateral order doctrine because the order did not satisfy the third and fourth requirements). Moreover, "[i]t is well established in Maryland that generally 'interlocutory discovery orders do not meet the requirements of the collateral order doctrine and are not appealable under that doctrine.'" *Falik,* 413 Md. at 177, 991 A.2d at 1243 (quoting *St. Joseph,* 392 Md. at 87, 896 A.2d at 311).

Here, Petitioner persists in seeking appellate review pursuant to the collateral order doctrine, in opposition to the holding by the Court of Special Appeals, or alternatively, under the *Perlman* doctrine, which he avers should be an applicable fourth exception to the final judgment rule. Petitioner asserts that our application of the *Perlman* doctrine to this case would result in the relief that he seeks, which ultimately is a review of the merits of his objections.[16]

---

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.
(b) When allowed. If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
(1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

16. At the hearing on Petitioner's protective order, defense counsel argued that the disclosure of his treatment records and testimony of his treating physician would violate the patient and psychiatrist or psychologist privilege set forth in Md.Code (2006 Repl.Vol.), § 9–109 of the Courts and Judicial Proceedings Article ("C.J.P."). Petitioner, therefore, contested the discoverability of the records and testimony. The trial judge found that Harris had not expressly waived the privilege, but

## II. The Collateral Order Doctrine

Harris contends that the collateral order doctrine applies here and that consequently we should review the merits of the trial judge's rulings.[17] We have held that the collateral order

ruled that there was in fact no privilege under C.J.P. § 9–109(d)(3)(i) because defense counsel raised Harris's mental condition by alleging incompetence to stand trial and requesting a competency evaluation. The trial judge thus disavowed Harris's suggested distinction between medical records created for the purpose of the competency evaluations and those for treatment. Ostensibly, a future appeal on these orders would ask whether the trial judge abused his discretion in denying the motion for a protective order of the subpoenaed treatment records and physician testimony.

**17.** "The collateral order doctrine was recognized by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." *St. Mary's County v. Lacer*, 393 Md. 415, 428, 903 A.2d 378, 386 (2006); *see also Dep't of Social Services v. Stein*, 328 Md. 1, 11, 612 A.2d 880, 884–85 (1992) (noting that *Cohen* is the "seminal case on the collateral order doctrine"); *see also Sigma Reproductive Health Center v. Maryland*, 297 Md. 660, 665, 467 A.2d 483, 485 (1983) (noting that "[n]ot withstanding the development of the collateral order doctrine in *Cohen* ... and its progeny ... the federal courts and this Court, with relatively few exceptions, have strictly adhered to the final judgment rule.").

In *Cohen*, the Supreme Court held that the trial judge's ruling denying the corporate defendant's motion to compel the shareholder plaintiffs to post security for costs pursuant to an applicable state statute was an immediately appealable order, stating:
 This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated....
 We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question.
*Cohen*, 337 U.S. at 546–47, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536–37.
In *Sigma*, we noted that "[i]n Cohen, the district court order neither involved a step toward final disposition of the merits nor did it represent an aspect of the case that would be merged in a final judgment."

doctrine "treats a 'narrow class' of interlocutory orders as final judgments regardless of the posture of the case." *Bowen,* 410 Md. at 296, 978 A.2d at 684 (quoting *St. Mary's County v. Lacer,* 393 Md. at 428, 903 A.2d at 386) (citing *In re Franklin P.,* 366 Md. 306, 326, 783 A.2d 673, 685 (2001)). "Time after time, this Court's opinions have emphasized that the collateral order doctrine is extremely narrow and that it is applicable only under extraordinary circumstances." *Bowen,* 410 Md. at 296, 978 A.2d at 684 and cases cited therein.

█ This Court has recently reiterated in *Falik* the factual predicate to application of the collateral order doctrine. There, we said:

The collateral order doctrine treats

as final and appealable interlocutory orders that: (1) conclusively determine the disputed question; (2) resolve an important issue; (3) resolve an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment. The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. In particular, the fourth prong, unreviewability on appeal, is not satisfied except in extraordinary situations.

*Falik,* 413 Md. at 176–77, 991 A.2d at 1242–43 (quoting *St. Joseph,* 392 Md. at 86, 896 A.2d at 310) (quoting *Nnoli,* 389 Md. at 329, 884 A.2d at 1223) (internal citations and quotation marks omitted); *see Bowen,* 410 Md. at 296, 978 A.2d at 684 (noting that all four elements of test are "conjunctive in nature" and must each be met).[18] Thus, the collateral order

---

*Sigma,* 297 Md. at 668, 467 A.2d at 487 (citing *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225).

**18.** The Supreme Court has referred to the *Cohen* collateral order doctrine as a three part test, as have we. *See Mohawk Indus. v. Carpenter,* 558 U.S. ──, 130 S.Ct. 599, 605, 175 L.Ed.2d 458, 466 (2009) ("This requirement finds expression in two of the three traditional *Cohen* conditions."); *see also Sigma,* 297 Md. at 669–70, 467 A.2d at 488 (referring to "the three prongs of the *Cohen* collateral order

doctrine is "based upon a judicially created fiction," *Dawkins v. Baltimore City Police Department,* 376 Md. 53, 64, 827 A.2d 115, 121 (2003), which permits immediate appellate review of an order that shares sufficient attributes of a final judgment.

 Interlocutory discovery orders, such as the ones implicated here, typically are not immediately appealable under the collateral order doctrine because most fail the third and fourth requirement. Discovery orders

> do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, a typical discovery order is aimed at ascertaining critical facts upon which the outcome of the ... controversy might depend. In addition, discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively reviewable on appeal from a final judgment.

*Falik,* 413 Md. at 177, 991 A.2d at 1243 (quoting *St. Joseph,* 392 Md. at 87, 896 A.2d at 311). In *St. Joseph,* we noted:

> The "singular situation," [*In re Foley, supra,* 373 Md. at 636, 820 A.2d at 593] in which this Court has held that interlocutory discovery orders are appealable under the collateral order doctrine, involves trial court orders permitting the depositions of high level governmental decision makers for the purpose of "extensively probing ... their individual decisional thought processes." *Montgomery Co. v. Stevens, supra,* 337 Md. at 479, 654 A.2d at 881, quoting *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 207, 477 A.2d at 763.

*St. Joseph,* 392 Md. at 88, 896 A.2d at 311(footnote omitted). The orders here cannot be subsumed into that "singular situation" category highlighted in the *St. Joseph* case.

In the present case, the Court of Special Appeals assumed *arguendo* that the first two requirements were met, and then held that the discovery orders failed the third and fourth requirements of the collateral order doctrine. The intermedi-

---

doctrine....."). Nevertheless, here we refer to four requirements, the substance of the test under either formulation being exactly the same.

**318**

ate appellate court determined that the resolution of Harris's competency to stand trial would necessarily impact the merits of the trial, e.g., an incompetency finding by the trial judge would preclude trial. In addition, the court noted that the discovery orders were not unreviewable on appeal, *In re Foley*, 373 Md. at 636, 820 A.2d at 593, where we noted that "extraordinary situations" usually precede a determination that a discovery order is "effectively unreviewable[.]" We will likewise *assume arguendo* that the discovery orders conclusively determined the issue of privilege pertaining to the records and that privilege was an important issue at the time of the orders, and therefore, we consider whether the third and fourth requirements of the collateral order doctrine were met.[19] We conclude that they were not; thus the doctrine does not apply in this case.

### A. The Third Requirement of the Collateral Order Doctrine

The collateral order doctrine requires that the contested order(s) be completely "separable from" and "collateral to" the merits of the action. *See Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536 (holding that an order for plaintiff shareholders to post a bond, allegedly required by statute, was appealable because that decision would not "affect, or ... be affected by, [a] decision on the merits of this case[,]" and that the "claims of right [were] separable from, and collateral to, rights asserted in the [underlying] action"); *c.f. Schuele*, 412 Md. at 573–74, 989 A.2d at 221 (holding that an order denying a motion to compel arbitration satisfied the

---

19. Even if we did not assume that the issue of privilege was "conclusively determined" at this stage, the issue would still not be ripe for appellate review. We note the reasoning in *Kurstin v. Bromberg Rosenthal*, 191 Md.App. 124, 990 A.2d 594 (2010), where the intermediate appellate court concluded that a disputed question relating to whether a "deposition would improperly breach the attorney-client privilege" would not be "conclusively determined" under the collateral order doctrine unless and "until the contents of any communication" between the privilege holder and her attorney "are either received in or rejected as evidence at the trial of a the legal malpractice case." *Kurstin*, 191 Md.App. at 148–49, 990 A.2d at 608.

third requirement because it "determine[d] only the forum in which the parties should settle their dispute without reaching any of [the] . . . claims").

Determining that the third prong was not met, the Court of Special Appeals held, in the present case, that

the issue of privilege pertaining to [Harris's] records from Perkins is not completely independent from the merits of the action, that is, the issue of guilt or innocence of the crimes charged. To the contrary, the circuit court's ruling regarding the disclosure of [Harris's] medical records, and the testimony of his treating physician, was in the nature of a discovery order aimed at ascertaining critical facts upon which the outcome of a competency determination might depend. The outcome of the competency determination would, in turn, impact the merits of the action because [Harris] cannot be tried on the merits until the circuit court finds him competent to stand trial. We conclude that the resolution of the disputed issue is not separate from the merits of the action.

*Harris v. State,* No. 2299, slip op. at 7–8 (April 19, 2010).

Generally, most discovery orders are not separate from the merits of an action. *See e.g., Hudson v. Housing Authority,* 402 Md. 18, 26, 935 A.2d 395, 399–400 (2007) (determining that interrogatories inquiring into the underlying facts of the Housing Authority's claim against a tenant and his breach of a residential lease were critical to an ultimate determination of that breach) and cases cited therein. For example, in *In re Foley,* 373 Md. at 635, 820 A.2d at 592, we held that an order for a medical examination of the subject of guardianship proceedings "was obviously not completely separate form the merits of the controversy. On the contrary, it was a typical discovery order aimed at ascertaining critical facts upon which the outcome of the guardianship controversy might depend." Moreover, in *Sigma,* this Court held that "the denial of the motion to quash [a subpoena duces tecum] is not appealable" because "the order to produce documents . . . is not completely separate from the merits of the criminal proceedings." *Sigma,* 297 Md. at 670, 467 A.2d at 488.

 While a competency hearing is a distinct phase of a criminal trial, it is not entirely "separate from" and "collateral to" the trial but rather it is "a step toward final disposition of a prosecution." *See Sigma,* 297 Md. at 666, 467 A.2d at 486 (quoting *State v. Lekin,* 271 N.W.2d 697, 700 (Iowa 1978)) ("If an order decides an issue merely as a step toward final disposition of a prosecution, it is interlocutory; however, if it disposes of a separable branch of the case, it is an appealable final judgment."). The determination of incompetence requires that a trial judge specifically consider a criminal defendant's ability to understand the nature or object of the proceedings; or to assist in his or her defense; incompetence exists when a defendant incapable of either. *Peaks v. State,* 419 Md. 239, 18 A.3d 917 (2011); *see also* Md.Code (2008 Repl.Vol.), § 3–101(f) of the Criminal Procedure Article. Once incompetence is suspected or alleged, the competency determination becomes a condition precedent that is inextricably intertwined with the criminal trial. Analogous to *In re Foley,* here, the competency hearing will involve ascertaining the critical facts upon which the court will determine whether Harris will be compelled to stand trial, or not.[20] Accordingly, because the discovery orders for treatment records and testimony were not aimed at resolving an issue entirely collateral to and separate from the merits of the underlying criminal case, here, the third requirement of the collateral order doctrine is not met.

## B. The Fourth Requirement of the Collateral Order Doctrine

 Generally, "discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively

---

**20.** It appears that the treatment records were particularly pertinent to the competency hearing because of the change in Harris's mental status (incompetent, competent, and then incompetent again) conveyed to the court by Perkins's staff. In the instant case, the trial judge stated that he would not proceed with the competency hearing without giving both parties the benefit of all information about Harris's evaluations and treatment at Perkins Hospital, indicating that in his view any other position would be fundamentally unfair.

reviewable on appeal from a final judgment" and "[a] party aggrieved by a discovery order and aggrieved by the final judgment may challenge the discovery ruling on appeal from the final judgment." *St. Joseph*, 392 Md. at 87, 896 A.2d at 311 (citing *In re Foley*, 373 Md. at 635, 820 A.2d at 587); *c.f. Town of Chesapeake Beach v. Pessoa Co.*, 330 Md. 744, 757–58, 625 A.2d 1014, 1020–21 (1993) (holding that the existence of an agreement to arbitrate is necessarily a preliminary matter and so a trial court ruling requiring arbitration must be immediately appealable because "judicial review of an award following arbitration is limited."). The United States Supreme Court has recently highlighted the exclusivity of those orders which may be "effectively unreviewable" stating:

"[T]he third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digital Equipment* [*v. Desktop Direct, Inc.*], 511 U.S. [863] at 878–879, 114 S.Ct. 1992[, 128 L.Ed.2d 842 (1994) ]. That a ruling "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed." *Id.*, at 872, 114 S.Ct. 1992, 128 L.Ed.2d 842. Instead, the decisive consideration is whether delaying review until the entry of final judgment "would imperil a substantial public interest" or "some particular value of a high order." *Will* [*v. Hallock* ], 546 U.S., [345] at 352–53, 126 S.Ct. 952, 163 L.Ed.2d 836[ (2006) ] .

In making this determination, we do not engage in an "individualized jurisdictional inquiry." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Rather, our focus is on "the entire category to which a claim belongs." *Digital Equipment* [511 U.S. 863], 114 S.Ct. 1992[, 128 L.Ed.2d 842]. As long as the class of claims, taken as a whole, can be adequately vindicated by other means, "the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted," does not provide a basis for jurisdiction under §§ 1291. *Ibid.* (quot-

ing *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (alteration in original)). *Mohawk Indus. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 605–06, 175 L.Ed.2d 458, 466–67 (2009); *see also Wilson v. O'Brien,* 621 F.3d 641, 642 (7th Cir.2010) (holding that the implication of the Supreme Court's decision in *Mohawk Industries,* was that "the collateral order doctrine does not support an interlocutory appeal by a party to the litigation who contends that the district judge erred in resolving a dispute about an evidentiary privilege[ ] . . . [because] an appeal from the final decision suffices to deal with any error.")

Here, defense counsel contends that the violence to the patient-therapist privilege incurred by the discovery orders will be unreviewable on appeal, should Harris ultimately be found competent to stand trial and subsequently convicted, because "[o]nce [Harris's] treatment records and information are disclosed in court, their privileged status can never be fully restored." The State maintains that there is nothing to "restore" because the patient-therapist "privilege disappeared either when [Harris] placed his competency at issue or when the records were disclosed to all parties, without timely objection, on November 18, 2008." The Court of Special Appeals considered similar arguments when the case was presented to it and noted:

> We are not persuaded by appellant's argument that once his treatment records are disclosed, any privilege is lost and unable to be restored. The records were, in fact, disclosed to the State at the November 18, 2008 hearing following the circuit court's ruling. Arguably, the privilege has already been lost, and appellant's argument has been rendered moot.
>
> Moreover the record reveals that no objection was made to disclosure of the records to the State following the court's ruling, nor was any other relief sought.[21]

---

21. The later point is somewhat misleading because Harris did request a stay of the discovery orders on December 3, 2008 and the stay was granted on December 11, 2008.

The United States Supreme Court, when considering the "importance" of the attorney-client privilege, declined to hold that orders adverse to the privilege were immediately appealable under the collateral order doctrine stating "we routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Mohawk Industries,* 558 U.S. at ——, 130 S.Ct. at 606, 175 L.Ed.2d at 467.[22] The Supreme Court concluded:

> In our estimation, postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

*Mohawk Industries,* 558 U.S. at ——, 130 S.Ct. at 606–07, 175 L.Ed.2d at 468; *see e.g., Hudson,* 402 Md. at 27, 935 A.2d at 400 ("It is a long established principle of appellate procedure, now embodied in Rule 8–131(d), that an appeal from a final judgment ordinarily brings up for appellate review all [other] orders in the case."). We hold that the discovery orders here are not "effectively unreviewable" because if the privilege applies to the treatment records as well as Dr. Patel's testimony, and assuming Mr. Harris is ultimately found competent to stand trial, is convicted, and then appeals his conviction, the issue of whether privileged information was improperly disclosed at the competency determination phase may be addressed at that time.

---

22. Contrary to defense counsel's assertion, *Mohawk Industries* is instructive, if not binding, because it explores the meaning of the *Cohen* test, which we have obviously incorporated into our case law, and because *Mohawk Industries* addresses appellate jurisdiction over final decisions arising from 28 U.S.C. § 1291, which is read in pari materia with § 12–301 of the Courts and Judicial Proceedings Article. *Sigma,* 297 Md. at 664, 467 A.2d at 485 (citing *Stewart v. State,* 282 Md. 557, 571, 386 A.2d 1206 (1978)) (stating "there [is] no substantive difference between 28 U.S.C. § 1291 and the Maryland statute.").

### III. The *Perlman* Doctrine

 Upon concluding that the collateral order doctrine did not apply, the Court of Special Appeals dismissed Harris's appeal without considering whether the trial judge's ruling denying his protective order was alternatively appealable under the *Perlman* doctrine. In *Perlman,* the United States Supreme Court approved an interlocutory appeal of a denial of a motion that challenged a discovery order on the basis of privilege.[23] *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918); *see also United States v. Myers,* 593 F.3d 338, 345 (4th Cir.2010) (citing *Church of Scientology of Ca. v. United States,* 506 U.S. 9, 18, 113 S.Ct. 447, 452, 121 L.Ed.2d 313, 322, n. 11 (1992)).

 At the outset, we note that the basic premise of *Perlman* is inconsistent with Maryland jurisprudence because: (1) generally discovery orders are not immediately appealable, *Falik,* 413 Md. at 177, 991 A.2d at 1243,[24] and (2) if the issue is

---

**23.** Very recently, the Tenth Circuit summarized *Perlman* stating:

> In *Perlman,* the inventor of a device, Louis Perlman, testified on behalf of his company in an infringement suit against *Firestone Tire & Rubber Company.* 247 U.S. at 8, 38 S.Ct. 417. As part of his testimony, Mr. Perlman submitted exhibits to the court. *Id.* Mr. Perlman's company ultimately sought to dismiss its suit without prejudice, and the court granted the motion conditioned on the exhibits being impounded in the custody of the court clerk. *Id.* at 8–9, 38 S.Ct. 417. Thereafter, the United States initiated a grand jury proceeding against Mr. Perlman and sought the exhibits from the court clerk in support of the criminal investigation. *Id.* at 9–10, 38 S.Ct. 417. Mr. Perlman objected, but the court ordered the clerk to produce them. *Id.* at 10–11, 38 S.Ct. 417. On Mr. Perlman's appeal to the Supreme Court, the United States argued that the order was interlocutory and unreviewable. *Id.* at 12, 38 S.Ct. 417. The Supreme Court disagreed, stating simply:
>
> > The second contention of the government is somewhat strange, that is, that the order granted upon its solicitation was not final as to *Perlman* but interlocutory in a proceeding not yet brought and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur. *Id.* at 13, 38 S.Ct. 417.

> *In re Motor Fuel Temperature Sales Practices Litig.,* 641 F.3d 470 (10th Cir.2011).

**24.** *See generally Church of Scientology,* 506 U.S. at 18, 113 S.Ct. at 452, 121 L.Ed.2d at 322–23, fn. 11 (1992) (citing *United States v. Ryan,* 402

denial of a privilege, consistent with our jurisprudence those issues also are not immediately appealable.[25] Moreover, we are not inclined to adopt and apply *Perlman* to these facts because: (1) it is questionable whether *Perlman* survived the United State's Supreme Court's decision in *Mohawk Industries*; and (2) we are not bound to adopt *Perlman* because it did not address a constitutional principle that is binding on the State courts but rather addressed "a matter of federal court

---

U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971)) (noting that *Perlman* is an exception to the general rule that a discovery order is not immediately appealable unless the subject of the order refuses compliance, is held in contempt, and then appeals the contempt order).

25. In Maryland, discovery orders challenged on the basis of privilege are not immediately appealable final orders and the exceptions are rare and fact-specific. *See Ehrlich v. Grove,* 396 Md. 550, 564–65, 914 A.2d 783, 792–93 (2007) (permitting interlocutory appeal under the collateral order doctrine where "[t]he Governor of the State of Maryland has asserted executive privilege ... attorney-client privilege and the work product doctrine"); *accord Johnson v. Clark,* 199 Md.App. 305, 21 A.3d 199, 2011 WL 2183761 (2011) (accepting jurisdiction under the collateral order doctrine of an appeal of a denial of a motion to quash a deposition and/or a motion for protective order on the grounds of executive privilege and the *Morgan* doctrine espoused in *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), by which high-ranking government officials are not subject to depositions with respect to their "mental processes in performing discretionary acts"); *but see Billman v. Maryland Deposit Insurance Fund Corporation,* 312 Md. 128, 129, 538 A.2d 1172 (1988) (dismissing consolidated appeals presented "involving the privileges against compulsory self-incrimination and the divulging of attorney-client communications"); *Kurstin,* 191 Md.App. 124, 990 A.2d 594 (2010) (holding that a discovery order adverse to the attorney-client privilege was not immediately appealable under the collateral order doctrine or the categorical exclusion of *Mohawk Industries* ).

Similarly, in the situations where discovery orders are aimed at probing the decision making of high government officials, those orders have been immediately appealable under the collateral order doctrine. *St. Joseph,* 392 Md. at 88, 896 A.2d at 311 (citing *Montgomery County v. Stevens,* 337 Md. 471, 654 A.2d 877 (1995) (holding that a discovery order for taking a deposition of and "administrative decision maker" and others during judicial review of an administrative decision was immediately appealable) and *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 210, 477 A.2d 759, 764 (1984) (holding that under the very unique facts of the case, the trial court's discovery order permitting depositions of commission members was appealable by the Commission or the State pursuant to the collateral order doctrine)).

appellate procedure." *See Dawkins v. Balt. City Police Dep't*, 376 Md. 53, 60, 827 A.2d 115, 119 (2003); *see generally Fletcher v. Weir*, 455 U.S. 603, 605, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490, 493 (1982) ("The principles which evolved on the basis of decisional law dealing with appeals within the federal court system are not, of course, necessarily based on any constitutional principle. Where they are not, the States are free to follow or to disregard them so long as the state procedure as a whole remains consistent with due process of law."); *see also Kurstin*, 191 Md.App. at 131, 990 A.2d at 598 (recalling that an appeal of "an adverse judicial decision . . . is not a constitutional right. It is only a grant of legislative grace.") and cases cited therein. Furthermore, to adopt and apply *Perlman* would require a determination at this stage of the criminal proceedings that (1) the State is a disinterested third party; (2) Petitioner has a privilege in his treatment records at Perkins, that has not been excluded by the court under C.J.P. § 9–109(d)(2) or that he has not introduced "his mental condition as an element of his claim or defense" under C.J.P. § 9–109(d)(3); and (3) that the issue is unreviewable after a final judgment on the merits.[26]

█ In *Perlman*, the privilege holder was "powerless" to protect his privilege because he was not a party to the underlying grand jury proceeding, although he would have become a party if ultimately indicted, presumably because of the successful introduction of the privileged documents. Thus, the status of the custodian of the privileged documents and the status of the privilege holder are paramount to a determination of whether the *Perlman* doctrine provides appellate

---

**26.** The Ninth Circuit has very recently distilled the required factual underpinnings preceding application of *Perlman*, stating:

Under *Perlman*, "a discovery order directed at a 'disinterested third-party custodian of privileged documents' is immediately appealable because the 'third party, presumably lacking a sufficient stake in the proceeding, would most likely produce the documents rather than submit to a contempt citation.'"

*United States v. Krane*, 625 F.3d 568, 572 (9th Cir.2010) (quoting *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir.2006) and cases cited therein).

jurisdiction in a given case. Petitioner contends that we should adopt the *Perlman* doctrine in this case as a basis for appellate jurisdiction contending that the discovery orders issued to Perkins Hospital and to Dr. Patel, allegedly "disinterested third-parties," to disclose all of Harris's medical records to the State were "final" orders, in as much as they decided the issue of privilege, and as such this present appeal is the only way to "protect privileged material in the hands of a non-party from unwarranted disclosure before the privilege is irrevocably damaged." Specifically, Petitioner contends that Perkins Hospital is disinterested because: (1) it has no interest in protecting Harris's patient-psychiatrist privilege; and (2) that while a State agency, Perkins Hospital is not affiliated with the State's Attorney's Office, and is therefore "not remotely a party to this proceeding." The record reveals that at the time that the discovery orders were served on Harris's treating physician, Dr. Patel, and Harris's treating hospital, Perkins Hospital, Harris was admitted, as an inpatient, into Perkins Hospital for treatment for his mental condition.[27] The State argues that "there is no need for this Court to make any expansion of the exceptions to the final judgment rule" because "there is no nonparty or disinterested third party . . . ."

We note that *Perlman* is a narrowly applied doctrine.[28] For example, the Seventh Circuit observed in *Wilson* that "[o]nly

---

**27.** Petitioner was committed by court order to the Department of Health and Mental Hygiene on May 30, 2008 for purposes of the competency evaluation. At the competency evaluation, Dr. Robinson diagnosed Harris with several mental disorders, which were the focus of his subsequent treatment at Perkins. At the November 18th hearing on Petitioner's motion for a protective order, the Assistant Attorney General for DHMH explained to the trial judge that this meant that while Harris did not "come to Perkins voluntarily," he did "consent to treatment on a voluntary basis."

**28.** Maryland courts have cited *Perlman* at least four times, but the doctrine has never been employed successfully to provide appellate jurisdiction. In *Dep't of Social Services v. Stein*, 328 Md. 1, 17, 612 A.2d 880, 888 (1992), *Perlman* did not apply because the "facts of th[e] case [were] not consistent with those upon which the Supreme Court formulated an exception to the *Alexander* [v. *United States*, 201 U.S.

when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate[,"] otherwise "an appeal from the final decision will allow review of the trial judge's ruling." *Wilson,* 621 F.3d at 643; *accord In re Grand Jury Proceedings,* 616 F.3d 1172, 1179 (10th Cir.2010) (holding that *Perlman* applies only when an appeal "is sought by an intervenor who claims a justiciable interest in preventing a third party's disclosure of documents or testimony"); *United States v. Cuthbertson,* 651 F.2d 189, 194 (3d Cir.1981) (same). In addition, the *Wilson* court observed that the evidentiary "privilege (if there is one) belongs to [the defendant]" and not to the nonparty asserting the privilege. *Wilson,* 621 F.3d at 643.

Furthermore, we are not persuaded to adopt *Perlman* because at least two federal circuit courts of appeals have explicitly questioned whether *Perlman* is still good law. The Tenth Circuit has said that *"Mohawk Industries* calls *Perlman* and its successors into question, because, whether the order is directed against a litigant or a third party, an appeal from the final decision will allow review of the district court's ruling. Only when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate." *Wilson,* 621 F.3d at 643; *accord Krane,* 625 F.3d at 573 (noting that *Perlman* applied because "for all practical purposes, this appeal is [the non-party privilege holder's] only

---

117, 26 S.Ct. 356, 50 L.Ed. 686 (1906)] rule [the *Perlman* doctrine]. The subpoenaed material [was] not in the hands of a third party who could not be expected to subject him or herself to contempt in order that the owner of the material may take an immediate appeal." *Stein,* 328 Md. at 17, 612 A.2d at 888. In *Sigma,* we summarized *Perlman* but we did not employ it to conclude that an order to quash a subpoena *duces tecum* was not an appealable final order. *Sigma,* 297 Md. at 672, 467 A.2d at 489. In *In re Special Investigation No. 244,* 296 Md. 80, 459 A.2d 1111 (1983), we cited but did not expressly rely upon *Perlman* in order to hold that a discovery order was immediately appealable where "in the procedural setting of th[e] case nothing remained before the court." *No. 244,* 296 Md. at 84, 459 A.2d at 1113. Finally, in *Beckette v. State,* 31 Md.App. 85, 89, 355 A.2d 515, 518 (1976) the Court of Special Appeals cited *Perlman* for the proposition that "[c]ourt files, unless sealed by order of the court, are properly viewable by any person[,]" which pertains to the facts of *Perlman* but not this case.

opportunity to seek review" of the orders adverse to his privilege); *In re Subpoena Duces Tecum Comm. Futures Trading*, 439 F.3d 740 (D.C.Cir.2006) (holding that *Perlman* permitted an immediate appeal because the government had complied in part, and intended to fully comply with a discovery order where records of trading activities of a non-party to an underlying criminal suit were to be disclosed in contravention to a claim of privilege and so its was the non-party's "last chance to oppose the order"). Accordingly, the fact that Harris is a party to the underlying litigation and therefore this is not his last opportunity for appellate review weighs against application of the *Perlman* doctrine to the case *sub judice*.[29]

Additionally, the Seventh Circuit has said that "Perlman relied in part on a conclusion that the rejection of an intervenor's claim is 'final' with respect to the intervenor, a position the Supreme Court rejected in *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), *when the intervenor is also a putative defendant*. Although the Supreme Court has cited *Perlman* since *DiBella*, it has not reconsidered how much of *Perlman's* rationale survives." *In re Klein*, 776 F.2d 628, 630 (7th Cir.1985) (emphasis added) (holding that the Seventh Circuit will allow interlocutory appeals, in accordance with its precedential opinions interpreting *Perlman*, in the interest of judicial economy). Moreover, the Tenth Circuit has very recently noted that "[w]e are aware of no case . . . that extends *Perlman* beyond criminal grand jury proceedings." *In re: Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470 (10th Cir.2011).

Even if we were to assume, without deciding, that Perkins Hospital is a disinterested non-party to this litigation on the basis that the State has no interest in refusing to obey the

---

**29.** The Massachusetts Supreme Judicial Court has noted that "[t]he [United States] Supreme Court, although it has not yet resolved the split among the Circuit Courts of Appeal, has characterized *Perlman* as falling 'within the "limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." ' " *In the Matter of a Grand Jury Subpoena*, 411 Mass. 489, 495, n. 8, 583 N.E.2d 241 (Mass.1992) (citing *United States v. Nixon*, 418 U.S. 683, 691, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

discovery orders and that Harris maintains a statutory pa-
tient-psychiatrist privilege in his treatment records, we, none-
theless, would not be persuaded to adopt *Perlman* given the
facts of this case.[30] Here, Harris's claim to privilege in the
records would be reviewable on appeal after a final judgment
on the merits. Presumably, at the, as yet unscheduled, com-
petency hearing, Harris would present "evidence on the rec-
ord," which the State could presumably rebut, both parties
would be culling their evidence from the admissible portions of
the treatment records and physician testimony. *See Peaks v.
State*, 419 Md. 239, 18 A.3d 917 (2011) (detailing the procedure
and content of a competency hearing); *accord Roberts v.
State*, 361 Md. 346, 356, 761 A.2d 885, 891 (2000) ("Once the
accused alleges incompetency to stand trial, a trial court is
required to make a determination as to the accused's compe-
tency to stand trial *based on the evidence on the record*.")
(emphasis in original).

Post-trial, as with any other potential discovery order that
Harris finds adverse to him, if he is convicted, he may appeal
the issue of the trial judge's exercise of discretion or failure to
exercise discretion in denying his motion for a protective
order. *See generally Goldsmith v. State*, 337 Md. 112, 115,
651 A.2d 866, 868 (1995) (affirming the trial judge's denial of
the defendant's pretrial discovery request for the victim's
psychotherapy records maintained by the victim's private psy-
chotherapist); *Zaal v. State*, 326 Md. 54, 88, 602 A.2d 1247,
1264 (1992) (reversing the trial judgment and remanding for
"controlled access" to materials that were requested by defen-
dant where the discovery was not permitted and the trial
judge's ruling was an abuse of discretion). The United States

---

**30.** *See e.g., United States v. Williams Companies, Inc.*, 562 F.3d 387, 392
(D.C.Cir.2009), stating: "[F]or purposes of determining jurisdiction,
this court accepts as true an allegation that the documents are privi-
leged and that any privilege has not been waived," or excluded by the
court under C.J.P. § 9–109(d)(2)–(3)(i) where a judge finds that an
informed patient has made communications during a court ordered
exam and "the issue at trial involves his mental or emotional disorder;"
or in a criminal proceeding the patient has introduced "his mental
condition as an element of his claim or defense[.]"

Supreme Court has held that the exercise of discretion over such pretrial orders is paramount, stating: "[e]nforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Sigma,* 297 Md. at 671, 467 A.2d at 488 (quoting *Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

Finally, further delay of these and similar proceedings cannot be tolerated, as Judge Easterbrook pointed out for the Seventh Circuit in *Klein:*

> When people may appeal any order enforcing a subpoena, it is easy to oppose every subpoena and make broad claims.... The claims are very hard to resolve, because they lack the focus on particular documents and defenses that an adjudication in contempt would produce. Win or lose, the appellants obtain delay, which they may value highly. If they lose here, they can always make more particular claims of privilege and try again. In the meantime the targets are free, memories of other witnesses are fading, evidence is disappearing.... *Calendra v. United States [United States v. Calandra* ], 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), say in no uncertain terms that such delay should not be tolerated.

*Klein,* 776 F.2d at 631. Harris's interlocutory appeal, indeed, involves the type of piecemeal litigation that is aimed at interrupting ongoing criminal proceedings. *Sigma,* 297 Md. at 665, 467 A.2d at 485. Accordingly, because Harris, a party and the alleged privilege holder, may seek an appellate determination of the propriety of the discovery orders after a final judgment, we are not inclined to take this opportunity to expand the pool of exceptions to our final judgment rule by annexation of the *Perlman* doctrine.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

ADKINS, J., concurs.

ADKINS, J., concurring.

Although I agree with the majority's ultimate decision in this case, I cannot embrace its rationale because I think it unwisely departs from, and narrows, the *Perlman* doctrine. *See Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). This doctrine, although infrequently applied, is vital to ensure protection against disclosure of privileged information when exceptional circumstances apply. I would not sacrifice it on the altar of judicial efficiency.

I agree with the majority that, in general, courts disfavor immediate review of discovery orders, instead preferring the subpoenaed party to submit to contempt if it wants to protect the documents:

> [W]hen an order of disclosure is directed against a person whose legal interests are affected, that person has a means to obtain appellate review: refuse to comply, be subjected to sanctions in contempt, and then appeal from the sanctions. That approach puts the objecting person's sincerity to the test by attaching a price to the demand for immediate review. Only serious and substantial disputes will interrupt the proceedings in the district court.

*Wilson v. O'Brien*, 621 F.3d 641, 642–43 (7th Cir.2010).

The heart of the *Perlman* doctrine is that certain third-party custodians, with no personal interest in protecting confidentiality, will not hazard a contempt citation to protect the rights of another party. In those situations, the privilege holder is "powerless to avert the mischief of the order[.]" *Perlman*, 247 U.S. at 13, 38 S.Ct. at 419. *See also In re Air Crash at Belle Harbor*, 490 F.3d 99, 106 (2nd Cir.2007) ("It is impossible for such an appellant to pursue the normal avenue of review—submission to contempt—because ... that appellant has not been required to do anything by the district court.").

The *Perlman* doctrine thus evolved to provide extra protections for important privileges against disclosure that, because of a third-party's ambivalence or indifference, would otherwise be violated. Under the *Perlman* doctrine, "a discovery order

directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology v. United States*, 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 452 n. 11, 121 L.Ed.2d 313 (1992). In *Perlman*, a privilege holder had, as a condition to dismissal of a patent infringement case, submitted exhibits to the clerk of the court, which were to be held under seal. In a later grand jury investigation, then District Court Judge Learned Hand subpoenaed that information, and Perlman, the privilege holder, moved to intervene. The Supreme Court held that the denial of Perlman's motion was immediately appealable. *Perlman*, 247 U.S. at 12, 38 S.Ct. at 419.

Because the discussion in *Perlman* was limited, the doctrine has been perhaps better defined in subsequent cases. Courts applying *Perlman* have relied, primarily, on the unwillingness of certain third-party custodians to submit to contempt or otherwise protect the documents. For example, in *National Super Spuds v. New York Mercantile*, 591 F.2d 174, 179 (2nd Cir.1979), the Second Circuit described *Perlman's* continuing justification as follows:

> it was unlikely that the third party [in *Perlman* ] would risk a contempt citation in order to allow immediate review of the appellant's claim of privilege. In fact it was not only unlikely but unimaginable. The only third party who could have helped Perlman was the clerk of the District Court for the Southern District of New York and we do not exactly see that clerk defying an order of then District Judge Learned Hand in order to assist the target of a grand jury perjury investigation.

(citing *United States v. Nixon*, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974)) (internal quotations omitted). *See also Burden–Meeks v. Welch*, 319 F.3d 897, 899–900 (7th Cir.2003) ("The idea behind *Perlman* is that someone who is neither a party to the suit nor a person aggrieved by the disclosure cannot be expected to put his own neck on the chopping block, standing in contempt of court just to help the privilege holder obtain appellate review.").

The majority seems to start off with a blanket rejection of *Perlman* as inconsistent with our general law against immediate appeal of disclosure orders:

> At the outset, we note that the basic premise of *Perlman* is inconsistent with Maryland jurisprudence because: (1) generally discovery orders are not immediately appealable, and (2) if the issue is denial of a privilege, consistent with our jurisprudence those issues also are not immediately appealable.

Majority op. at 324, 22 A.3d at 900 (citation omitted). It is inconsistent, to be sure, but all exceptions are inconsistent with the general rule, and the doctrine has been developed and recognized by other courts as a necessary and desirable exception. Like other "exceptions," the *Perlman* doctrine allows a predictable but flexible system under which courts measure each case, in its factual and procedural context.

The majority then summarily rejects *Perlman:*

> [W]e are not inclined to adopt and apply *Perlman* to these facts because: (1) it is questionable whether *Perlman* survived the United State's Supreme Court's decision in *Mohawk Industries;*[1] and (2) we are not bound to adopt *Perlman* because it did not address a constitutional principle that is binding on the State courts but rather addressed "a matter of federal court appellate procedure."

I am troubled by the majority's suggestion that *Perlman* was effectively abolished by *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009). In *Mohawk,* the Supreme Court considered whether a District Court's order compelling an employer to turn over documents that were subject to attorney-client privilege, was immediately reviewable under the collateral order doctrine. The Supreme Court held that the order was not immediately appealable under the collateral order doctrine, concluding immediate review was "not necessary to ensure effective review of orders

---

1. *See Mohawk Industries, Inc. v. Carpenter,* 558 U.S. ——, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009).

adverse to the attorney-client privilege[.]" *Mohawk,* 558 U.S. at ——, 130 S.Ct. at 606, 175 L.Ed.2d at 467.

One of the Court's primary justifications for its conclusion that immediate review was not necessary was *the existence of other remedies.* First, the Court concluded that a post-judgment appeal was sufficient in most cases:

> In our estimation, postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

*Mohawk,* 558 U.S. at ——, 130 S.Ct. at 606–07, 175 L.Ed.2d at 468.

Second, the Court observed that, for cases when post-judgment review was not sufficient, there were alternate routes. Relevant here, the Court discussed two "safety valves" for a litigant wanting immediate review:

> [L]itigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal.[2] .... [I]n extraordinary circumstances—*i.e.,* when a disclosure order "amount[s] to a judicial usurpation of power or a clear abuse of discretion," or otherwise works a manifest injustice—a party may petition the court of appeals for a writ of mandamus....
>
> Another long-recognized option is for a party to defy a disclosure order and incur court-imposed sanctions.

*Mohawk,* 558 U.S. at ——, 130 S.Ct. at 607–08, 175 L.Ed.2d at 469. Because these options existed "for promptly correcting

---

**2.** The *Perlman* Court also identified a statutory avenue for immediate appeal under 28 U.S.C. § 1292(b). Under that statute, a party may "ask the district court to certify, and the court of appeals to accept, an interlocutory appeal" if certain conditions are met. *Mohawk,* 558 U.S. at ——, 130 S.Ct. at 607, 175 L.Ed.2d at 469.

serious errors," the Court was able to conclude that a general rule of delayed review would not "imperil a substantial public interest" or "some particular value of a high order." *Id.* at ——, 130 S.Ct. at 605, 175 L.Ed.2d at 466.

*Mohawk's* holding is thus conditioned on the existence of an alternate vehicle for immediate appeal in extreme cases where postjudgment appeal is not adequate. *Perlman* is such a vehicle. Indeed, *Perlman's* primary justification is that the contempt route—perhaps the most universal "safety valve" identified by the *Mohawk* Court—is *not sufficient to protect certain rights.* I disagree with the majority's conclusion that the Supreme Court's approach in *Mohawk*, which was carefully constructed to preserve certain rights, should be interpreted as foreclosing avenues of review not expressly mentioned.

Indeed, the other cases which the majority cites on this point do not reject *Perlman*, but rather recognize a need for *Perlman*-like interlocutory appeals, if only in narrow circumstances. For example, the majority cites, as analogous authority, the 7th Circuit's decision in *In re Klein*, 776 F.2d 628 (7th Cir.1985). There, although the court observed that the Supreme Court "has not reconsidered how much of *Perlman's* rationale survives[,]" it allowed the interlocutory appeal and reached the merits of the case. *Klein*, 776 F.2d at 630, 632. *See also National Super Spuds*, 591 F.2d at 179 ("[P]redictions of *Perlman's* demise would have been as exaggerated as those of Mark Twain's."). The majority's other cited cases merely emphasize that *Perlman* is a narrowly-applied doctrine. *See, e.g., Wilson*, 621 F.3d at 642 (*Perlman* appeal allowed "[o]nly when the person who asserts a privilege is a non-litigant[.]").

For the reasons above, I disagree with the majority and conclude that *Perlman* appeals, an exception to the general rule on appeal of discovery orders, serve an important purpose. The majority broadly rejects the *Perlman* doctrine, without, I suggest, a full analysis of the doctrine and its purpose. I submit that *Perlman* recognized a significant and

persisting problem with regard to third-party custodians of privileged documents.

Testimonial privileges serve important public interests [3] and their protection depends upon consistent and predictable judicial decision-making. As the Supreme Court has explained, although in a different context: [4]

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Jaffee v. Redmond,* 518 U.S. 1, 17–18, 116 S.Ct. 1923, 1932, 135 L.Ed.2d 337 (1996) (citations omitted). In exceptional circumstances, like *Perlman* and its progeny, appellate review of an order requiring disclosure of alleged privileged information is necessary.

---

**3.** *See, e.g., Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 2084, 141 L.Ed.2d 379 (1998) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)) ("The [attorney-client] privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' "); *Jaffee v. Redmond,* 518 U.S. 1, 11, 116 S.Ct. 1923, 1929, 135 L.Ed.2d 337 (1996) ("The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.").

**4.** The Court made these comments in the context of "reject[ing] the balancing component of the privilege implemented by [the Seventh Circuit] and a small number of States." *Jaffee,* 518 U.S. at 17, 116 S.Ct. at 1932.

My view does not mean that Harris is entitled to a *Perlman* appeal. Harris has pled incompetency, and accordingly he has no privilege with respect to his psychiatric records. Under Maryland Code, (1973, 2006 Repl. Vol.), Section 9–109(d)(3) of the Courts and Judicial Proceedings Article, a person has no privilege with respect to use of psychiatric testimony or records in a court proceeding if he has put his mental health at issue.[5] An immediate appeal is not necessary to protect Harris's rights, because he has waived those rights through his pleading.

Accordingly, I would leave open the potential for relief in more extreme circumstances, and affirm the Circuit Court on the narrower grounds described above.

---

5. This section states: "There is no privilege [for psychiatric records] if ... [t]he patient introduces his mental condition as an element of his claim or defense[.]" Maryland Code, (1973, 2006 Repl. Vol.), § 9–109(d)(3) of the Courts and Judicial Proceedings Article.