Dissenting Opinion by
Watts, J.,
which Greene and Battaglia, JJ., join
Respectfully, I dissent. “Adherence to precedent must ... be the rule rather than the exception if litigants are to have faith in the even-handed administration of justice in the courts.” Benjamin N. Cardozo, The Nature of the Judicial Process 34 (1921).
In this case, I disagree with the Majority’s conclusion that this Court has jurisdiction to overrule Roary v. State, 385 Md. 217, 222, 867 A.2d 1095, 1098 (2005), in which this Court held that “first-degree assault is a proper underlying felony to support a second-degree felony-murder conviction[,]” and I ultimately disagree with the Majority’s decision to overrule Roary. See Maj. Op. at 686, 690-91, 155 A.3d at 495, 498.
Jurisdiction to Overrule Roary
A review of the parties’ contentions, the procedural history of the case, and relevant case law leads to the inescapable conclusion that, under the circumstances of this appeal, this Court does not have jurisdiction to overrule Roary. The State contends that this Court lacks jurisdiction to overrule Roary because the collateral-order doctrine does not permit an appeal for failure to state an offense prior to final judgment in a case. The State explains that, if Jones had moved to dismiss in the circuit court on the ground that second-degree felony murder predicated on first-degree assault was not a crime— ie., if Jones had moved to dismiss for failure to state an offense—then the issue of overruling Roary would not be “collateral”; instead, the issue would go to the heart of guilt or innocence. In other words, the State asserts that the collateral-order doctrine is inapplicable because the denial of a motion to dismiss on such a ground—ie., the allegation that *710 the Indictment failed to properly charge an offense—is reviewable only after a final judgment.
Jones counters that this Court has jurisdiction to reconsider Roary because according to Jones, Roary is the cause of the double jeopardy issue in this case, and overruling Roary would resolve this case’s double jeopardy issues. Both parties appear to agree that the appeal on the double jeopardy issue arose under the collateral-order doctrine. Simply put, with respect to the issue of Court’s jurisdiction to overrule Roary, I agree with the State.
Pursuant to Md. Code Ann., Cts. & Jud. Proc. (“CJP”) § 12-301, generally, an appellate court has jurisdiction only over a final judgment. See Harris v. State, 420 Md. 300, 312, 22 A.3d 886, 892 (2011) (“Generally, in Maryland[,] appellate jurisdiction may arise only after entry of a final judgment.” (Citing CJP § 12-301)). “There are three well-identified, but infrequently sanctioned, limited exceptions to the final judgment rule”; where one of these exceptions applies, an appellate court has jurisdiction over an interlocutory order—i.e., an order that is not a final judgment. Id. at 312-14, 22 A.3d at 893-94 (citation and ellipsis omitted). The three exceptions are: (1) appeals that a statute other than CJP § 12-301 expressly allows; (2) appeals of orders that trial courts enter pursuant to Maryland Rule 2-602, not disposing of the entire action; and (3) appeals pursuant to the common-law collateral-order doctrine. See id at 313-14, 22 A.3d at 893-94.
I agree with the parties that the only basis for the instant appeal is the common-law collateral-order doctrine.[1] The in *711 stant appeal does not arise out of a final judgment. Jones has not been convicted of any crime. Two charges remain pending against Jones: second-degree felony murder and use of a firearm in the commission of a crime of violence or felony.[2] The jury hung on, and the circuit court declared a mistrial as to, these two charges. Accordingly, there was no final judgment.
Under the collateral-order doctrine, an appellate court has jurisdiction over an order that: (1) conclusively determines the disputed question; (2) resolves an important issue; (3) resolves an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment. See Harris, 420 Md. at 316, 22 A.3d at 895. This Court has stressed that “[t]he collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. In particular, the fourth prong, unre-viewability on appeal, is not satisfied except in extraordinary situations.” Id at 316, 22 A.3d at 895 (citation omitted).
In this case, if Jones’s motion to dismiss had been based on the argument that there is no such crime as second-degree felony murder predicated on first-degree assault—ie., the argument that Roary is no longer good law—then the denial of the motion to dismiss would not have satisfied the collateral-order doctrine. First, the Roary issue would not have been completely separate from the merits of the action; indeed, if there is no such crime as second-degree felony murder predicated on first-degree assault, then Jones is necessarily not guilty of that charge. Second, in stark contrast to the double *712 jeopardy issue, the Roary issue does not implicate a right to be free from a second trial.
Stated otherwise, raising the Roary issue in the motion to dismiss would have been the equivalent of moving to dismiss the indictment for failure to state an offense; and, significantly, in Abney v. United States, 431 U.S. 651, 663, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court concluded that such a motion to dismiss does not satisfy the collateral-order doctrine for two reasons:
First, an order denying a motion to dismiss an indictment for failure to state an offense is plainly not ‘collateral’ in any sense of that term; rather it goes to the very heart of the issues to be resolved at the upcoming trial. Secondly, the issue resolved adversely to [the defendant] is such that it may be reviewed effectively, and, if necessary, corrected if and when a final judgment results.
Id.
The double jeopardy issue does not encompass the Roary issue. It would be wrong to hold otherwise. When a court decides a double jeopardy issue, the court decides whether two crimes are “the same offense” for purposes of double jeopardy. The court does not inquire as to whether one of those crimes is actually a crime in the first place. To the contrary, a double jeopardy analysis presumes that the two crimes are, indeed, crimes. If there is a challenge to the existence or propriety of one crime, that challenge does not constitute a double jeopardy issue. Indeed, a double jeopardy issue like the instant one can arise only if the State charges the defendant with at least two crimes and engages in at least two consecutive prosecutions. By contrast, a defendant’s claim that there is no such thing as a particular crime can arise even if the State charges the defendant with only one crime in only one prosecution. The double jeopardy issue clearly does not encompass the question of whether second-degree felony murder predicated on first-degree assault is actually a crime or whether Roary should be overruled.
*713 In short, the two questions are distinct. To use algebraic terms, the question of “Are X and Y the same?” does not encompass the question of “Does X exist?”—i.e., the first question does not include the second question.
In this case, the double jeopardy question is: “Is second-degree specific-intent murder the same offense as second-degree felony murder predicated on first-degree assault?” The Roary question is: “Is there such a crime as second-degree felony murder predicated on first-degree assault?” The double jeopardy question asks whether Jones should be tried again for the same offense; the Roary question does not.
It would be incorrect to hold that the double jeopardy question depends on the answer to the Roary question. Assuming hypothetically, purely for argument’s sake, that Roary was wrongly decided, and that there is no such crime as second-degree felony murder predicated on first-degree assault, then the result is not that double jeopardy bars a new trial of Jones on that charge. Indeed, the reason why a new trial would not occur in that circumstance has nothing to do with double jeopardy; the reason is not that Jones has already been acquitted of a crime, but instead that the offense in question is not a crime at all, and thus could be neither properly charged nor the subject of any trial—whether it is Jones’s first trial, second trial, or whichever number trial. In other words, the outcome of the Roary question has nothing to do with double jeopardy.
Although the motion to dismiss would not have satisfied the collateral-order doctrine if it had been based on the Roary issue, the reality is that the motion to dismiss was, in fact, based on the double jeopardy issue; thus, the circuit court’s denial of the motion to dismiss satisfied the collateral-order doctrine. Accordingly, the issue becomes: May this Court, on its own initiative, append the Roary issue to a properly-taken appeal, where that issue could not have been the subject of a properly-taken appeal?
The State is correct in advocating that Rush v. State, 403 Md. 68, 939 A.2d 689 (2008) is instructive on this issue. In
*714 Rush, id. at 74, 939 A.2d at 692, this Court held that a criminal defendant “did not have the right to cross-appeal, [but] she did have the right, in the State’s appeal, to defend the ruling of the trial court on alternative grounds.” Law enforcement officers had arrested the defendant, Mirandized her, and interviewed her. See id. at 74-78, 939 A.2d at 692-94. During the interview, the defendant made inculpatory statements. See id. at 78, 939 A.2d at 694. The defendant moved to suppress the inculpatory statements on two alternative grounds: (1) that the advisements that a law enforcement officer provided to her did not comport with Miranda; and (2) the statements were involuntary because the law enforcement officer obtained them through threats and inducement. See Rush, 403 Md. at 78, 939 A.2d at 694-95. The trial court granted the motion to suppress only on the ground that the advisements that the law enforcement officer provided to the defendant did not comport with Miranda; the trial court expressly noted that it was not granting the motion to suppress on the ground of involuntariness. See id. at 79, 939 A.2d at 695.
The State appealed the trial court’s grant of the motion to suppress pursuant to what is now CJP § 12-302(c)(4)(i), which states in pertinent part that, in certain criminal cases, “the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have been seized in violation of the Constitution of the United States, the Maryland Constitution, or the Maryland Declaration of Rights.” See Rush, 403 Md. at 80, 939 A.2d at 695. The defendant noted a “cross-appeal,” and argued on appeal that the circuit court erred in ruling that her statements should not be suppressed on the ground of involuntariness. Id. at 80, 939 A.2d at 695.
The Court of Special Appeals reversed the trial court’s grant of the motion to suppress, holding that the advisements that the law enforcement officer provided to the defendant comported with Miranda. See Rush, 403 Md. at 80, 939 A,2d at 695-96. The Court of Special Appeals held that it had jurisdiction to consider the voluntariness issue that the defendant raised in her “cross-appeal,” and concluded that the defen *715 dant’s statements were involuntary. See id. at 80, 939 A.2d at 696. The defendant filed a petition for a writ of certiorari, and the State filed a cross-petition for a writ of certiorari', this Court granted the petition and the cross-petition. See id. 80-81, 939 A.2d at 696.
Addressing the Miranda issue first, this Court agreed with the Court of Special Appeals that the advisements that the law enforcement officer provided to the defendant comported with Miranda. See Rush, 403 Md. at 89, 939 A.2d at 701. Turning to the voluntariness issue, this Court noted that the threshold question was whether the Court of Special Appeals had jurisdiction to consider the defendant’s “cross-appeal.” See id. at 95, 939 A.2d at 705. We observed that, in previous eases, we had “narrowly construed any grant of appellate authority” and had “strictly construed the right to appeal[.]” Id. at 98, 939 A.2d at 706 (citations omitted). This Court concluded that what is now CJP § 12—302(c)(4) “does not confer appellate jurisdiction to hear a defendant’s cross-appeal. Rather, the statute clearly limits the right to appeal from an interlocutory order to the State; the defendant is free to appeal from the final judgment.” Id. at 101, 939 A.2d at 708.
That said, this Court went on to determine that, “[although [the defendant] could not file a ‘cross-appeal,’ she was entitled to raise the voluntariness issue in the State’s appeal, in order to defend the suppression ruling on an alternative ground raised by [the defendant] and ruled on by the” trial court. Id. at 103, 939 A.2d at 709. This Court ultimately concluded that the record was inadequate to make a determination as to whether the defendant’s statements were voluntary. See id. at 104, 939 A.2d at 710. This Court remanded the case to the Court of Special Appeals with instructions to reverse the grant of the motion to suppress and remand to the trial court for further proceedings. See id. at 104, 939 A.2d at 710.
Notably, not every member of this Court agreed with the holding that the defendant could raise the voluntariness issue in the State’s appeal. In a concurring and dissenting opinion, Judge Irma S. Raker agreed with the Majority that the *716 advisements that the law enforcement officer provided to the defendant comported with Miranda; however, Judge Raker disagreed with the Majority as to the appealability of the voluntariness issue. See Rush, 403 Md. at 105, 939 A.2d at 710 (Raker, J., concurring and dissenting). Specifically, Judge Raker stated that she “agree[d] with the State that [the defendant could ]not appeal the [trial cjourt’s finding that portions of her statement were voluntary.” Id. at 105, 939 A.2d at 710 (Raker, J., concurring and dissenting). Judge Raker explained: “The ruling was interlocutory, and because there exists no statute or right to appeal such an order, her claim may be raised in an appeal from a final judgment, and not within the State’s appeal.” Id. at 105, 939 A.2d at 710 (Raker, J., concurring and dissenting). In other words, contrary to the position taken in this case, Judge Raker would not have permitted the appending of the issue of voluntariness to the State’s appeal of a trial court’s grant of the motion to suppress on the basis of a failure to comply with Miranda.
Rush provides no support for the idea that this Court may address the Roary issue in this appeal. In Rush, the defendant moved to suppress on two grounds, and the trial court granted the motion to suppress on one of those grounds. The State was empowered by statute—specifically, what is now CJP § 12-302(c)(4)—to appeal the trial court’s grant of the motion to suppress. Significantly, this Court held that the defendant was entitled to argue in favor of upholding the trial court’s grant of the motion to suppress on both of the grounds that the defendant raised in the motion to suppress.
This appeal is vastly different. Here, Jones moved to dismiss the charge for second-degree felony murder predicated on first-degree assault on the ground of double jeopardy. Jones did not, in the motion to dismiss, contend that there is no such crime as second-degree felony murder predicated on first-degree assault. In other words, Jones did not raise the Roary issue in the motion to dismiss. The circuit court denied the motion to dismiss, and Jones appealed. Jones was empowered by the collateral-order doctrine to appeal the circuit *717 court’s denial of the motion to dismiss only because the motion to dismiss was based on double jeopardy.
The distinction between the double jeopardy issue and the Roary issue is crucial, and materially distinguishes this appeal from Rush. In Rush, regardless of whether the trial court granted the motion to suppress on the Miranda issue, the voluntariness issue, or both, the State would have had a right to appeal the trial court’s grant of the motion to suppress. By contrast, here, Jones had a right to appeal the trial court’s denial of the motion to dismissed only because Jones moved dismiss on the ground of double jeopardy. If Jones had raised only the Roary issue in the motion to dismiss—ie., simply argued that there is no such crime as second-degree felony murder predicated on first-degree assault—then Jones would have lacked a right to appeal, because the circuit court’s denial of the motion to suppress would not have satisfied the collateral-order doctrine.
Also significant is the fact that, in Rush, this Court concluded that the defendant—ie., the appellee, the non-appealing party, in whose favor the trial court ruled—was entitled to argue in favor of upholding the trial court’s grant of the motion to suppress on- both of the grounds that the defendant raised in the motion to suppress. By contrast, here, Jones is the appellant—the appealing party, whose motion to dismiss the circuit court denied. In contrast to the defendant in Rush, Jones is not seeking to uphold a trial court’s ruling. To the contrary, Jones seeks reversal of the circuit court’s denial of the motion to suppress.
The reason why this fact is important is demonstrated by the following quotation in Rush, 403 Md. at 103, 939 A.2d at 709: “[A] reviewing court may uphold the final judgment of a lower court on any ground adequately shown by the record[.]” (Emphasis added) (citation and internal quotation marks omitted). Although neither Rush nor this appeal involves a final judgment because both cases arise out of interlocutory appeals, this quotation from Rush shows that an appellate court may uphold a trial court’s ruling on any ground that the *718 record shows. The quotation from Rush is conspicuously silent on whether an appellate court may reverse a trial court’s ruling on any ground that the record shows.
This is appropriate, given that, generally, appellate courts consider whether to reverse a trial court’s ruling only on the grounds that are raised by the appealing party—ie., the party who is aggrieved by the trial court’s ruling. Appellate courts do not comb the record, looking for grounds for reversal that the appellant did not raise. Or, as Judge Charles E. Moylan, Jr. once so eloquently put it: “[AJppellate courts do not range forth, like knights errant, seeking flaws in trials. Their quest is far more modest. They monitor a trial for the limited purpose of seeing if the trial judge committed error.” Austin v. State, 90 Md.App. 254, 265, 600 A.2d 1142, 1147 (1992).
Jones attempts to distinguish Rush on the ground that Rush arose out of an interlocutory appeal that a statute allowed, whereas this case arises out of an interlocutory appeal that the collateral-order doctrine allows. Jones fails to explain why this difference in procedural histories leads to the result that Rush is not instructive here or that the distinction matters at all.
Equally unpersuasive is Jones’s reasoning that this Court has jurisdiction to consider the Roary issue because overruling Roary would obviate the need to consider the double jeopardy issue. As discussed above, appellate jurisdiction is not automatic; it must arise from one of the four specific bases for appealability, such as the collateral-order doctrine. Jones provides no case law, and I know of none, that stands for the proposition that, where Issue A is properly before an appellate court, the appellate court may consider a different legal question, Issue B, solely by virtue of the circumstance that resolving Issue B in a certain way would render Issue A moot.
Even more troubling is the circumstance that this Court, not Jones, raised the Roary issue by sua sponte ordering the parties to brief it. Just as the parties cannot confer appellate jurisdiction on an appellate court by agreement, nor can an appellate court confer upon itself appellate jurisdiction to consider a particular issue.
*719 The Majority relies on Wynn v. State, 388 Md. 423, 879 A.2d 1097 (2005) for the proposition that this Court has the inherent authority to “consider an issue that is inextricably intertwined to the issue before it.” Maj. Op. at 691, 155 A.3d at 498. Despite the Majority’s reliance on it, Wynn, in actuality, stands for the opposite proposition—that this Court lacks such authority. In Wynn, 388 Md. at 424-25, 879 A.2d at 1098, this Court held that a trial court erred in dismissing charges in response to the State’s violation of a pre-trial scheduling order. The trial court declared a mistrial as to certain charges due to a deadlocked jury, and gave the State thirty days to decide whether to reprosecute the defendant. See id. at 426, 879 A.2d at 1099. The State did not file anything to indicate that the State planned to reprosecute the defendant. See id. at 427, 879 A.2d at 1100. Forty-five days after the trial court declared a mistrial, the trial court conducted a status conference, at which the defendant moved to dismiss. See id at 426, 879 A.2d at 1099. The trial court granted the motion to dismiss on the ground that the State failed to file a line. See id at 427-28, 879 A.2d at 1100. The State appealed, and the Court of Special Appeals reversed, holding that the trial court lacked the authority to dismiss the charges. See id. at 428, 879 A.2d at 1100. This Court agreed and affirmed. See id at 425, 879 A.2d at 1098.
This Court rejected the defendant’s contention that, based on a trial court’s inherent authority to control its docket, the trial court in Wynn had the power to dismiss the charges based on the State’s failure to comply with the scheduling order. See id. at 430-31, 879 A.2d at 1101-02. Significantly, this Court explained: “Inherent authority should be applied only when necessary to the performance of the judicial function.” Id. at 429, 879 A.2d at 1100-01. This Court also observed: “Courts across the country, including this Court, have maintained that inherent authority should be recognized and yet employed rarely.” Id. at 435, 879 A.2d at 1104. This Court held that a trial court’s inherent authority to control its docket does not outweigh the State’s discretion to determine whether to prosecute. See id. at 443, 879 A.2d at 1109.
*720 Wynn establishes that a court may not invoke its inherent authority except in the rare instance that it is necessary to do so, and Wynn does not address at all an appellate court’s use of inherent authority to confer jurisdiction upon itself. This Court’s holding in Wynn concerning inherent authority does not in any way support the Majority’s decision to append the Roary issue to the instant appeal.
Although the Majority states that this Court has the inherent authority to consider Roary because the Roary issue is “inextricably intertwined” with the issues that the parties raised on appeal, as explained above, the Roary issue is not interwoven with the double jeopardy issue; the question of whether two crimes are the same offense for purposes of double jeopardy is not the same as the question of whether one of those crimes is really a crime at all.
In sum, given that Jones would have been unable to appeal the circuit court’s denial of the motion to suppress under the collateral order doctrine had the motion been based on the ground that second-degree felony murder predicated on first-degree assault is not an offense, this Court lacks jurisdiction over the issue. The Roary issue and the double jeopardy issue are not the same issue, and jurisdiction for the appeal is not conferred by the inherent authority of the Court.
Application of the Principle of Stare Decisis to Roary
Although I would hold that this Court lacks jurisdiction to overrule. Roary, I will, nonetheless, address the merits of the Majority’s decision with respect to Roary. “Under [the principle of] stare decisis, absent extremely narrow exceptions, an appellate court does not overrule its precedent.” Thompson v. UBS Fin. Servs., Inc., 443 Md. 47, 57-58, 115 A.3d 125, 181 (2015) (citation and internal quotation marks omitted). There are two such extremely narrow exceptions. The first is that “an appellate court need not adhere to [the principle of] stare decisis where the appellate court’s precedent was clearly wrong and contrary to established principles.” Id. at 58 n.5, 115 A.3d at 131 n.5 (citation and internal quotation marks omitted). The second is that an appellate court need not *721 adhere to the principle of stare decisis where the appellate court’s “precedent has been rendered archaic and inapplicable to modern society through the passage of time and evolving events.” Id. at 58, 115 A,3d at 131 (brackets, citation, and internal quotation marks omitted).
Neither of the exceptions to the principle of stare decisis applies to Roary. Significantly, in his supplemental brief, Jones explicitly concedes that the first exception to the principle of stare decisis—ie., that the precedent in question was clearly wrong and contrary to established principles—does not apply to Roary. Specifically, Jones states:
[Jones] does not believe that Roary is clearly wrong or contrary to established principles. Although [Jones] agrees with the Roary dissent and maintains that this Court should adopt the merger doctrine to resolve the problems [that] Roary has created in his case, the Roary decision was not legally incorrect. In Roary, the Court considered an issue of first impression in Maryland. Additionally, the Roary Court issued its decision amongst many different approaches to the merger issue in many different States, and Maryland ultimately joined a minority of [S]tates in rejecting the merger doctrine.
(Emphasis added) (citations omitted). Jones is absolutely correct in conceding that Roary was not clearly wrong. The Majority, however, takes just the opposite approach, and concludes that Roary “was decided wrongly.” Maj. Op. at 706, 155 A.3d at 507. It speaks volumes that Jones does not endorse the same basis for overruling Roary as adopted by the Majority.
In describing the principle of stare decisis, the Majority quotes a fífty-two-year-old case from West Virginia, Adkins v. St. Francis Hosp. of Charleston, 149 W.Va. 705, 143 S.E.2d 154, 163 (1965). See Maj. Op. at 704-05, 155 A.3d at 505-06. In Adkins, 143 S.E.2d at 162, the Supreme Court of Appeals of West Virginia stated that a case may be overruled “when it clearly is apparent that an error has been made o[r] that the application of an outmoded rule, due to changing conditions, results in injustice^]” But, in Adkins, the Supreme Court of *722 Appeals of West Virginia does not apply the same standard that this Court has used—that a case may be overruled where the case was clearly wrong and contrary to established principles, or has been rendered archaic and inapplicable to modern society through the passage of time and evolving events. See Thompson, 443 Md. at 58 & n.5, 115 A.3d at 131 & n.5. Significantly, the language from Adkins that the Majority quotes does not contain the terms “clearly wrong” or “clearly erroneous,” but instead simply speaks of whether a case is merely “bad” or “incorrect.” See Maj. Op. at 704-05, 155 A.3d at 505-06; Adkins, 143 S.E.2d at 163 (“The benefit to the public in the future is of greater moment than any incorrect decision in the past.”); id. (“[I]t becomes the duty as well as the right of the court to consider [precedent] carefully, and to allow no previous error to continue, if it can be corrected.”).
Immediately after quoting Adkins, the Majority relies on other non-binding sources, such as law review articles and books. See Maj, Op. at 704-06, 155 A.3d at 506-07, As to the principle of stare decisis, the Majority uses citations of Maryland law in only two instances. First, the Majority provides a string cite of Maryland cases after the sentence: “Courts recognize the power to decline to follow the doctrine [of stare decisis] when persuaded the prior decision is wrong.” Maj. Op. at 704, 155 A.3d at 506. This sentence fails to indicate that the standard for overruling a case is not whether the case is merely “wrong”; rather, the standard is whether the case is “clearly wrong and contrary to established principles.” The Majority’s only other citation of Maryland law as to the principle of stare decisis is a citation of Unger v. State, 427 Md. 383, 417, 48 A.3d 242, 261-62 (2012) after the sentence: “Nonetheless, every court recognizes that the rule of stare decisis is not ironclad or absolute.” Maj. Op. at 704, 155 A.3d at 506.
Ultimately, as to overruling Roary, the Majority states: “With these considerations in mind, we find good and sufficient cause in favor of overruling Raary[.]” Maj. Op. at 706, 156 A.3d at 507. The phrase “good and sufficient cause” appears nowhere in the Majority’s discussion of the authorities it relies upon to defíne the concept of stare decisis. Thus, it is *723 unclear from what source the Majority has drawn the phrase “good and sufficient cause” as the standard for overruling Maryland case law. What is clear is that this Court has never used “good and sufficient cause” as a standard for overruling precedent.
In sum, applying the principle of stare decisis established in Maryland case law leads to the conclusion that Roary was not clearly wrong and contrary to established principles; and, in the past twelve years, there has not been a societal change that has rendered archaic the principle that second-degree felony murder can be predicated on first-degree assault.
This court’s holding in Roary was based on sound principles of law, and is as valid today as it was in 2005. In Roary, 385 Md. at 222-23, 867 A.2d at 1097-98, the defendant and multiple co-conspirators beat a person; during the beating, two of the defendant’s co-conspirators dropped a boulder on the person’s head, and the person died as a result of his injuries. A jury convicted the defendant of, among other crimes, second-degree felony murder predicated on first-degree assault. See id. at 224, 867 A.2d at 1099. On appeal, the defendant urged this Court to adopt a “merger” doctrine, under which second-degree felony murder could not be predicated on first-degree assault because the murder theoretically “merges” with the assault. See id at 225, 232-33, 867 A.2d at 1099, 1103-04.
This Court noted that it had previously been established that second-degree felony murder could be predicated on a felony that is “sufficiently dangerous to life[,]” as “determined by the nature of the [felony] or by the manner in which [the felony] was perpetrated in a given set of circumstances.” Id. at 229, 867 A.2d at 1101 (quoting Fisher v. State, 367 Md. 218, 263, 786 A.2d 706, 733 (2001)) (emphasis and internal quotation marks omitted). In Fisher, 367 Md. at 263, 786 A,2d at 733, this Court held, among other things, that a felony could serve as a predicate for second-degree felony murder if: (1) the felony was inherently dangerous to human life; or (2) under a particular case’s circumstances, the defendant committed the felony in a manner that was dangerous to human life. In *724 Fisher, id. at 226, 786 A.2d at 711, two defendants were convicted of second-degree felony murder predicated on child abuse. On appeal, the defendants challenged the convictions’ validity on three alternative grounds. See id. at 246-47, 786 A.2d at 728-24. First, the defendants contended that, under Maryland law, there was no such crime as second-degree felony murder, as no statute provided for such a crime—in contrast to first-degree felony murder, for which certain statutes enumerated the possible predicate felonies. See id. at 246-47, 786 A.2d at 723. Second, the defendants argued that, even if second-degree felony murder was cognizable under Maryland law, only common law crimes, as opposed to statutory ones, could serve as predicate felonies. See id. at 247, 786 A.2d at 728. Third, the defendants asserted that, even if statutory crimes could serve as predicate felonies, only crimes that were inherently dangerous to human life could serve as predicate felonies. See id. at 247, 786 A.2d at 723-24.
In Fisher, id. at 247, 263, 786 A.2d at 724, 733, this Court rejected all three of the defendants’ contentions. This Court held that second-degree felony murder is cognizable under Maryland law because the statutes that enumerated the predicate felonies for first-degree felony murder simply established that a murder that was committed during one of those felonies was first-degree murder; the statutes did not supersede the common law felony-murder doctrine. See id. at 250-61, 786 A.2d at 725-26. This Court held that statutory crimes could serve as predicate felonies for second-degree felonies because few courts, if any, had limited felony murder to common law predicate felonies, and this Court was “not persuaded to adopt” such a limitation. Id. at 253-54, 786 A.2d at 727. This Court held that a felony could serve as a predicate for second-degree felony murder if: (1) the felony was inherently dangerous to human life; or (2) under a particular case’s circumstances, the defendant committed the felony in a manner that was dangerous to human life. See id. at 263, 786 A.2d at 733. Accordingly, this Court concluded that the convictions for second-degree felony murder predicated on child abuse were *725 valid. See id. at 263, 786 A.2d at 733. To the extent that this Court overrules Roary, the Court essentially overrules Fisher.
In Roary, this Court also observed that, in Deese v. State, 367 Md. 293, 296, 786 A.2d 751, 752 (2001), this Court had repeated the principle that second-degree felony murder could be predicated on “any ... inherently dangerous felony [that is] not enumerated in the first[~]degree murder statute[.]” Roary, 385 Md. at 228, 867 A.2d at 1101. This Court issued Deese, 367 Md. 293, 786 A.2d 751, on the same day on which this Court issued Fisher, 367 Md. 218, 786 A.2d 706. In Deese, 367 Md. at 296, 786 A.2d at 752, as in Fisher, 367 Md. at 246-47, 786 A.2d at 723-24, the defendant was convicted of second-degree felony murder predicated on child abuse, and argued on appeal that second-degree felony murder was not cognizable under Maryland law. Citing Fisher, this Court reaffirmed that second-degree felony murder is cognizable under Maryland law. See Deese, 367 Md. at 296, 786 A.2d at 752.
In Roary, 385 Md. at 230, 867 A.2d at 1102, turning to the issue before it, this Court held: “Based on the standard [that] we enunciated in Fisher and reaffirmed in Deese, first-degree assault is a proper underlying felony to support a second-degree felony-murder conviction.” (Footnote omitted). This Court concluded that first-degree assault not only was inherently dangerous in the abstract, but also was committed in a dangerous way under the circumstances of Roary. See Roary, 385 Md. at 230, 867 A.2d at 1102 (“[F]irst-degree assault is dangerous to human life. The nature of the crime ..., ... which ‘creates a substantial risk of death,’ is undoubtedly dangerous to human life. Furthermore, the manner in which the crime was committed in this instance ... is also clearly dangerous to human life.”). Thus, this Court expressly declined to adopt the “merger” doctrine. See id. at 225, 867 A.2d at 1099.
This Court acknowledged that courts in other States had adopted the “merger” doctrine, but noted that “Maryland is unique in that[,]” since colonial times, felony murder has remained a common law crime, as opposed to a statutory one. *726 Id. at 231-32, 867 A.2d at 1102-03. This Court also observed that, in Maryland, “[t]he harshness of the [felony-murder] rule has been ameliorated by limiting its application to those felonies that are dangerous to human life[,] either because of their inherent nature or by the manner in which the felony is perpetrated[.]” Id. at 231, 867 A.2d at 1103.
After a review of cases in which courts in other States had adopted the “merger” doctrine, we “recognize[d] that our relatively strict adherence to the common law felony-murder doctrine [was] not favored by a number of other States[,] as explained supra; nothing in our case law or research, however, [] persuaded us that the rule in Maryland should be otherwise.” Id. at 236, 867 A.2d at 1106. We concluded that, instead of “limit[ing] the scope of the [felony-murder] doctrine’s application to only those underlying felonies that are independent of the resulting death[,]” “the better policy is for the law to provide an additional deterrent to the perpetration of felonies [that], by their nature or the attendant circumstances, create a foreseeable risk of death.” Id. at 236, 867 A.2d at 1106 (citing Fisher, 367 Md. at 256, 786 A.2d at 728-29). Thus, when deciding Roary, we were aware that courts in other States had adopted the “merger” doctrine, but we determined that adopting the “merger” doctrine in Maryland would be at odds with both our precedent and the goal of deterring felonies that are dangerous to human life.
In addressing the scope of second-degree felony murder in Roary, this Court was not required to interpret a constitutional provision, but instead was required to interpret the common law—which the General Assembly has the power to supersede by statute at any time. See Polakoff v. Turner, 385 Md. 467, 481-82, 869 A.2d 837, 846 (2005) (“[C]ertain statutory enactments may alter the common law.”); see also Julian v. Buonassissi, 414 Md. 641, 677, 997 A.2d 104, 126 (2010) (A statute “is not intended to change the common law absent an express, specific declaration to do so.” (Citation and internal quotation marks omitted)). It has been twelve years since this Court issued Roary, yet, notably, the General Assembly has not amended CR § 2-204 (Murder in the Second Degree) to *727 provide that second-degree felony murder cannot be predicated on first-degree assault. In Pye v. State, 397 Md. 626, 635, 919 A.2d 632, 637 (2007), this Court unequivocally stated: “[Consistent with the [General Assembly]’s awareness of our cases, we have been reluctant to overrule our prior decisions where it is likely that the [General Assembly], by its inaction, indicates its adoption, or at least acceptance, of the interpretation reflected in the opinion[.]” (Citation omitted). Given that the General Assembly has not exercised its authority to supersede Roary by statute, it is especially inappropriate for the Majority to overrule Roary here.
Judge Cathy Cochran of the Court of Criminal Appeals of Texas, made a cogent point in Lawson v. State, 64 S.W.3d 396, 396-97, 400-01 (Tex. Crim. App. 2001) (Cochran, J., concurring), in which Judge Cochran agreed with the majority of the Court of Criminal Appeals of Texas that an assault may serve as a predicate for felony murder. In a concurring opinion, joined by three other judges, Judge Cochran explained:
The concern [behind the “merger” doctrine] was that every aggravated assault that resulted in a death would then be subject to prosecution as a murder. True enough, if the actor commits an act clearly dangerous to human life which causes the person’s death. That is precisely the rationale of the felony murder rule. But unlike involuntary manslaughter, not every aggravated assault results in death. If manslaughter could constitute the underlying felony in a felony murder, then every single manslaughter case would be automatically upped to felony murder. The offense of manslaughter itself would be obviated. That is neither logical nor legal. But not every instance of aggravated assault, injury to a child, criminal mischief, etc. ends in death. Not every instance of these offenses is the result of an act that is clearly dangerous to human life. Not every instance of these offenses would automatically be upped to felony murder. Use of these offenses as the basis of a felony murder prosecution do not pose the same logical and legal problem of merger that involuntary manslaughter has *728 always been recognized, both at common law and in felony murder statutes, as posing.
Id. at 400-01 (Cochran, J., concurring) (emphasis added) (footnote omitted).
Echoing the concern that was discussed in Lawson, 64 S.W.Bd at 400 (Cochran, J., concurring), here, the Majority is concerned with the idea that, under Roary, potentially every first-degree assault that results in the victim’s death would be a felony murder, and, according to the Majority, this is not a desirable outcome. See Maj. Op. at 729-30, 155 A.3d at 520-21. In Roary, 385 Md. at 236, 867 A.2d at 1106, however, this Court made a deliberate policy decision to recognize second-degree felony murder predicated on first-degree assault to deter violent assaults that result in death. Nothing in Maryland has changed with respect to violent assaults in the twelve years since Roary except, perhaps, that such assaults occur more frequently, and that, with a new constituency of the Court, the Majority holds differently on the question of whether to recognize second-degree felony murder predicated on first-degree assault as a valid offense.
Interestingly, although conceding that Roary was not clearly wrong and contrary to established principles, Jones contends that Roary has been superseded by significant changes in the law or facts because applying Roary to deaths by shooting would remove the distinction between felony murder and specific-intent murder. As we explained in Michelle L. Conover v. Brittany D. Conover, 450 Md. 51, 66 & n.10, 146 A.3d 433, 442 & n.10 (2016), the principle that an appellate court may overrule precedent that “has been superseded by significant changes in the law or facts” is synonymous with the principle that an appellate court may overrule precedent that “has been rendered archaic and inapplicable to modern society through the passage of time and evolving events.” (Citations and internal quotation marks omitted). In his supplemental brief, Jones essentially contended that Roary is archaic, but was not clearly wrong and contrary to established principles.
*729 At oral argument, however, in response to questions about whether his position was that Roary was clearly wrong or that Roary was archaic, Jones’s counsel repeated his concession that Roary had been not decided incorrectly. Jones’s counsel argued that, although Roary was not wrong in that it was contrary to another law, Roary has a “fundamental flaw” in that it allows “every murder to be a felony murder.”[3] Jones’s counsel theorized that this Court should overrule Roary because the case is “not practical.”
Jones’s counsel’s request to overrule Roary because it is not “practical” is unfounded in law. In several cases, this Court has repeated the well-established principle that, under the doctrine of stare decisis, we may overrule our precedent only if at least one of the following circumstances exists: (1) our precedent is clearly wrong and contrary to established principles; or (2) our precedent has been rendered archaic and inapplicable to modern society through the passage of time and evolving events—ie., our precedent has been superseded by significant changes in the law or the facts. See Thompson, 443 Md. at 58 & n.5, 115 A.3d at 131 & n.5; Waine, 444 Md. at 700, 122 A.3d at 299; Conover, 450 Md. at 66 & n.10, 146 A.3d at 442 & n.10; DRD Pool Serv., Inc. v. Freed, 416 Md. 46, 64, 5 A.3d 45, 55-56 (2010). It is simply not the law that we may overrule our precedent on the ground that we believe our precedent not to be “practical.”[4]
*730 To the extent that Jones argues that Roary is archaic, nothing could be further from the truth. Roary’s specific purpose was to deter violent assaults that result in death. Today—twelve years after this Court issued Roary in 2005— deterring violent assaults that result in death is more important than ever. According to the Baltimore Sun, in 2015, Baltimore had more homicides per capita than ever before. In 2016, Annapolis, our State’s capital, had more homicides than ever before.[5] Far from archaic, Roary is more beneficial to the public interest than ever before—yet, the Majority elects to overrule Roary and strip the State of an important tool in prosecuting homicides.
Indeed, the Majority essentially adopts the dissenting opinion in Roary—of which the majority of this Court in Roary was necessarily aware, and declined to follow. The Majority does not rely on any changed societal circumstance in support of the Majority’s decision to overrule Roary, nor does the majority establish that the holding in Roary was clearly wrong.
Respectfully, a review of the majority opinion demonstrates that it is simply a rewrite of the dissenting opinion in Roary. In their respective discussions of the subject of the “merger” doctrine, both the majority opinion and the Roary dissent discuss People v. Moran, 246 N.Y. 100, 158 N.E. 35, 36 (1927), People v. Ireland, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, 582-83, 590 (1969) (en banc), State v. Fisher, 120 Kan. 226, 243 P. 291, 293 (1926), State v. Branch, 244 Or. 97, 415 P.2d 766, 767 (1966) (en banc), Garrett v. State, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978), and Robert L. Simpson, Annotation, Application of Felony-Murder Doctrine Where The Felony Relied Upon Is an Includible Offense with the Homicide, 40 A.L.R.3d 1341 (2004). See Maj. Op. at 700-04, 155 A.3d at 503-05; Roary, 385 Md. at 251-53, 867 A.2d at 1114-16 (Raker, J., dissenting). Thus, the majority opinion is *731 not based on any new authorities or developments in the law that would lead to a determination that Roary was clearly wrong.
The Majority cites the Roary dissent after the sentence: “Hence, we overrule [Roary] before that case creates more undesirable consequences for the criminal law in Maryland, as pointed out in the dissent.” Maj. Op. at 706, 155 A.3d at 507. Both the Majority and the Roary dissent state that most other jurisdictions to consider the issue have adopted the “merger” doctrine. See Maj. Op. at 706-07, 155 A.3d at 507-08; Roary, 385 Md. at 253, 867 A.2d at 1115. Both the Majority and the Roary dissent assert that Roary constitutes an improper extension of the felony-murder doctrine. See Maj. Op. at 706-08, 155 A.3d at 507-08; Roary, 385 Md. at 250, 867 A.2d at 1114. Thus, the rationale used by the Majority to overrule Roary was known by this Court at the time it issued Roary, but the Court declined to follow the dissent’s view.
The Majority reasons that Roary was “contrary to our own jurisprudence which has stated often that the felony-murder rule should not be expanded.” Maj. Op. at 706, 155 A.3d at 507. After this sentence, the Majority cites Campbell v. State, 293 Md. 438, 451, 444 A.2d 1034, 1042 (1982), in which this Court stated: “We are persuaded that the felony-murder doctrine should not be extended beyond its traditional common law limitation.” As the Majority notes, in Campbell, id. at 451, 444 A.2d at 1042, this Court made this statement in the context of holding that the felony-murder doctrine does not apply where a defendant commits a lethal act that is neither a felony nor “in furtherance of a common design.” (Footnote omitted). Campbell does not stand for the proposition that it was improper for this Court to hold in Roary that assault can serve as a predicate for felony murder.
The Majority approvingly cites, and quotes a length, a 2006 Maryland Law Review Article that was critical of Roary. See Maj. Op. at 706-08, 155 A.3d at 507-08 (quoting Marcia J. Simon, Note, An Inappropriate and Unnecessary Expansion of Felony Murder in Maryland, 65 Md. L. Rev. 992-93 (2006)). At that time, the law review article’s author was a law student. In any event, it is not a basis for overruling a case that someone, *732 perhaps even another judge, expresses disagreement with the case’s outcome. Otherwise, anytime an opinion of this Court were criticized, it would be subject to being overruled.
At oral argument, Jones’s counsel asserted: “Nothing is lost if Roary is overruled. The other theories of second-degree murder already cover what Roary proscribes.” This argument is circular—and, indeed, meaningless—because it is premised on the assumption that Jones is correct about the ultimate issue before the Court—whether second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault are the same offense. If, in fact, second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault are different offenses—and they are, because, as discussed below, our precedent establishes that “substantial risk of death” is not synonymous with death being “the likely result”—then the State is losing the ability to prosecute defendants for deaths that arise from conduct that does not rise to the level of second-degree specific-intent murder. For example, a defendant may use a knife to stab a victim in the toe, and the victim may bleed to death as a result of the wound. Under such circumstances, it could be argued that the defendant did not commit second-degree specific-intent murder because: (1) the defendant did not intend to kill the victim; and (2) death is not “the likely result” of stabbing someone in the toe, which does not contain a vital organ. Certainly, however, the defendant committed second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, as the defendant created a substantial and foreseeable—but not necessarily likely or very probable—risk of death. Thus, contrary to Jones’s assertion, the State does “lose” the ability to obtain convictions for certain violent assaults resulting in death by virtue of overruling Roary.
The Majority spends much time discussing cases in which courts in other jurisdictions have adopted the “merger” doctrine. See Maj. Op. at 700-04, 155 A.3d at 503-05. However, when this Court decided Roary, it was aware that “most [SJtates considering this issue have adopted some version of
*733 the merger rule for first degree assaults resulting in the death of the victim.” Roary, 385 Md. at 253, 867 A.2d at 1115 (Raker, J., dissenting) (citations omitted).
The Majority does not mention that there are also States that rejected the “merger” doctrine. For example, in State v. Harris, 69 Wash.2d 928, 421 P.2d 662, 664 (1966) (en banc), the Supreme Court of Washington concluded: “In light of the distinctions made in our own statutes, we see no reason why we should adopt the ... ‘merger rule[ J ” Later, in State v. Thompson, 88 Wash.2d 13, 558 P.2d 202, 205 (1977) (en banc), the Supreme Court of Washington declined to overrule Harris, observing that the legislature had not superseded Harris in the ten years since the Court issued it. And, in State v. Wanrow, 91 Wash.2d 301, 588 P.2d 1320, 1320-21 (1978) (en banc), the Supreme Court of Washington again declined to overrule Harris, observing that adopting the “merger” doctrine “would be an unwarranted and insupportable invasion of the legislative function in defining crimes.” Decades after Thompson, 88 Wash.2d 13, 558 P.2d 202, in In re Pers. Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981, 982 (2002), as corrected (Oct. 29, 2002), as amended on denial of reconsideration (Mar. 14, 2003), in a 5-4 decision, in light of an amendment by the State’s legislature to the second-degree felony murder statute, the Supreme Court of Washington adopted the “merger” doctrine and held that assault cannot serve as a predicate for felony murder. It is worth observing that it has been twelve years since this Court issued Roary, and the General Assembly has not superseded it by statute.
Another case that is apropos here is State v. Trott, 289 A.2d 414, 419 (Me. 1972), in which the Supreme Judicial Court of Maine declined to adopt the “merger” doctrine. The Court acknowledged that it had “found favor in some jurisdictions[,]” but observed that the “merger” doctrine had “never been adopted or even considered in” Maine. Id. Ultimately, the Court “decline[d] to consider such an abrupt departure from our prior decisional law[.]” Id. (emphasis added).
*734 In Johnson v. State, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999), the Court of Criminal Appeals of Texas decided against adopting a general “merger” doctrine; adopted the “merger” doctrine only to the extent that manslaughter could not serve as a predicate for felony murder; and concluded that assault may serve as a predicate for felony murder. Later, in Lawson, 64 S.W.3d at 401 (Cochran, J., concurring), Judge Cochran explained that allowing assault to serve as a predicate for felony murder does “not pose the same logical and legal problem of merger that involuntary manslaughter has always been recognized, both at common law and in felony murder statutes, as posing.”
That other States may or may not have adopted the “merger” doctrine is not a basis for overruling Roary. This Court was aware that there were other States that had adopted the “merger” doctrine when it decided Roary. Simply put, as Jones has conceded, Roary is not clearly wrong. In refusing to adopt the “merger” doctrine in Roary, far from making a clearly wrong decision, this Court made a well-grounded decision about the law concerning felony murder in Maryland, and nothing has changed in the last twelve years to undermine the soundness of that decision.
The Merits
Having discussed the lack of any basis to overrule Roary, I will address the issue that this Court was asked to decide: whether, where a jury acquits a defendant of second-degree specific-intent murder and hangs on first-degree felony murder, and the trial court declares a mistrial as to first-degree felony murder, the prohibition on double jeopardy bars the State from prosecuting the defendant for second-degree felony murder predicated on first-degree assault. Faced with this issue, I would conclude that the State may prosecute Jones for second-degree felony murder predicated on first-degree assault. Specifically, I would conclude that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury does not have all of the same elements as second-degree specific-intent murder, and that *735 second-degree felony murder predicated on first-degree assault with a firearm does not have all of the same elements as second-degree specific-intent murder, as the former has the unique element of use of a firearm.
Required Evidence Test: Second-Degree Specific-Intent Murder and Second-Degree Felony Murder Predicated on First-Degree Assault
In Abeokuto v. State, 391 Md. 289, 353, 893 A.2d 1018, 1055 (2006), this Court explained that, under the “required evidence test,” Crime A is a lesser-included offense of Crime B where “all of the elements of [Crime A] are included in [Crime B], so that only [Crime B] contains [at least one] distinct element[.]” (Citation omitted). Accordingly, neither Crime A nor Crime B is a lesser-included offense of the other crime where each crime “contains an element [that] the other does not[.]” Id. at 353, 893 A.2d at 1055 (citation omitted).
The Maryland Criminal Pattern Jury Instruction on second-degree specific-intent murder, where neither justification nor mitigation is at issue, states in pertinent part:
[T]o convict the defendant of second[-]degree [specific-intent] murder, the State must prove: (1) that the defendant caused the death of (name); and (2) that the defendant engaged in the deadly conduct either with the intent to kill or with the intent to inflict such serious bodily harm that death would be the likely result.
MPJI-Cr 4:17(B) (emphasis added) (paragraph breaks and underlining omitted).
The Maryland Criminal Pattern Jury Instruction on second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury states in pertinent part:
[T]o convict the defendant of second[-]degree felony murder [predicated on first-degree assault with the intent to cause serious physical injury], the State must prove: (1) that [the defendant] [another participating in the crime with the defendant] committed the crime of first[-]degree assault *736 [with the intent to cause serious physical injury]; (2) that [the defendant] [another participating in the crime] killed (name); and (3) that the act resulting in the death of (name) occurred during the first[-]degree assault [with the intent to cause serious physical injury]. To convict the defendant of first[-]degree assault [with the intent to cause serious physical injury], the State must prove: (1) that the defendant intentionally caused serious physical injury to (name); and (2) that the injury was not [consented to by (name) ] [legally justified]. For second[-]degree felony murder, serious physical injury means injury that creates a substantial and foreseeable risk of death.
MPJI-Cr 4:17.7.2(A) (emphasis added) (some brackets in original) (paragraph breaks and underlining omitted).
Direct comparison of the elements of the offenses—second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury—guided by Thornton v. State, 397 Md. 704, 919 A.2d 678 (2007), leads to the conclusion that the two forms of murder share only one element: that the defendant— or, as to second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, the defendant or a co-participant—caused the victim’s death. The mental state that is required for second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is subsumed by second-degree specific-intent murder’s unique element of intent to kill or inflict such serious bodily harm that death would be the likely result. In short, second-degree specific-intent murder has all of the elements of first-degree assault with the intent to cause serious physical injury, plus a unique element: intent to kill or inflict such serious bodily harm that death would be the likely result. Accordingly, second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder.
Although the elements of one offense are included in the other, the intent elements of second-degree specific-intent *737 murder and second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury are different. Second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury requires merely that the defendant “intentionally caused serious physical injury[,]” which is “injury that creates a substantial and foreseeable risk of death.” MPJI-Cr 4:17.7.2(A). By contrast, second-degree specific-intent murder requires that the defendant have “the intent to kill or [ ] the intent to inflict such serious bodily harm that death would be the likely result.” MPJI-Cr 4:17(B). It is possible for a defendant to have an intent to cause injury that creates a substantial and foreseeable risk of death without having an intent to inflict such serious bodily harm that death would be the likely result.
I disagree with the position of Jones and the Court of Special Appeals, see Jones, 222 Md.App. at 618, 114 A.3d at 266, that “intent to inflict such serious bodily harm that death would be the likely result” is the equivalent of “intent to cause injury that creates a substantial and foreseeable risk of death.”[6] Contrary to the interpretation of Jones and the Court of Special Appeals, “substantial risk of death” is not synonymous with “death would be the likely result.” “Likely” means *738 “having a high probability of occurring!!,]” or “very probable!!.]” Likely, Merriam-Webster, http;//www.merriamwebster. com/dictionary/ likely [https://perma.ee/A7EQ-4AJV]. If death is the likely result, then death is very probable—ie., the chance that death will result is greater than 50%. By contrast, “substantial” means “considerable in quantity[.]” Substantial, Merriam-Webster, http://www.merriam-webster.com/ dictionary/substantial [https://perma.cc/8ZMT-JXLP]. If there is a substantial risk of death, then the risk of death is merely “considerable”—not necessarily “likely” or “very probable.”
As explained earlier, the following hypothetical illustrates how there can be a “substantial risk of death” even though death is not “the likely result.” A defendant wants to severely injure a victim without killing the victim. In other words, the defendant intends to cause a serious, but non-life-threatening, injury to the victim. Accordingly, the defendant uses a knife to stab the victim in the toe. The victim bleeds to death as a result of the wound. Under such circumstances, it could be argued that the defendant did not commit second-degree specific-intent murder because: (1) the defendant did not intend to kill the victim; and (2) death is not “the likely result” of stabbing someone in the toe, which does not contain a vital organ. Certainly, however, the defendant committed second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury, as the defendant created a substantial and foreseeable—but not necessarily likely or very probable—risk of death.
This conclusion is compelled by Thornton, 397 Md. at 709-10, 919 A.2d at 680-81, in which this Court held that a trial court erred at a bench trial at which second-degree specific-intent murder was at issue by presuming as a matter of law— as opposed to merely inferring—that, because a defendant thrust a knife into a victim, the defendant intended to inflict such serious bodily harm that death would be the likely result. In Thornton, id. at 720, 919 A.2d at 687, the defendant contended that the trial court erred by “equating intent to do [serious] bodily harm (second-degree [specific-intent] murder) with intent to do serious physical injury (first-degree as *739 sault)[.]” This Court agreed with the defendant’s premise that “[t]he requisite mental state for [second-degree specific-intent murder] is distinct from the requisite mental state for [first-degree] assault[.]” Id. at 728, 919 A.2d at 692. This Court explained the difference between the two mental states as follows:
“[S]erious physical injury” means injury [that] “[c]reates a substantial risk of death.” “Serious physical injury” constitutes a broad statutory concept that[,] by definition^] covers physical injury that may or may not cause a victim’s death. This differs from [second-degree] murder, and not only in the ultimate result where the victim dies. A person is guilty of [second-degree] murder only if he or she has the requisite intent (and malice) to cause such severe harm that death would be the likely result, not merely a possible result.
Id. at 730, 919 A.2d at 693 (bolding added) (italics and third alteration in original). In Thornton, id. at 730, 919 A,2d at 693, this Court illustrated the difference between the two mental states with the following hypothetical, which is similar to the above hypothetical that involves a knife: “[A defendant] directs a knife at the victim’s finger, intending to inflict serious bodily harm[;] the finger is severed[;] and, unknown to the [defendant], the victim is a hemophiliac,[7] and bleeds to death[.]” (Citation omitted). This Court indicated that, under such circumstances, the defendant commits second-degree felony murder predicated on first-degree assault, but not necessarily second-degree specific-intent murder. See id. at 730, 919 A.2d at 693. By contrast, “using a deadly weapon directed at a vital part of the body may give rise to an inference of an intent to commit [serious] bodily [harm] or an intent to kill[,]” and thus lead to a conviction for second-degree specific-intent *740 murder. Id. at 712, 919 A.2d at 682 (citation and internal quotation marks omitted).[8]
In short, in Thornton, 397 Md. at 730, 919 A.2d at 693, we determined that “substantial risk of death” is not synonymous with “death would be the likely result.” To the contrary, “substantial risk of death” has a broader meaning—and thus encompasses more acts, and is easier to prove—than “death would be the likely result.” There is no reason to depart from the reasoning expressed in Thornton; indeed, our holding in Thornton mandates the conclusion that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder.
As to second-degree felony murder predicated on first-degree assault with a firearm, in this case, the Court of Special Appeals reasoned that, in a prosecution for second-degree felony murder predicated on first-degree assault with a firearm, the State must prove, among other elements, “that the way in which the [first-degree] assault with a firearm was committed created a ‘reasonably foreseeable risk of death or of serious physical injury likely to result in death[.]’ ” Jones, 222 Md.App. at 617, 114 A.3d at 265 (quoting MPJI-Cr 4:17.7.2(B)). The Court of Special Appeals determined that second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault with a firearm. See Jones, 222 Md.App. at 619, 114 A.3d at 266 (“[S]econd-degree felony murder [predicated on first-degree assault ... require[s] proof of an additional element, that is, that the defendant committed or attempted to commit ... first-degree assault, either by causing or attempting to cause serious physical injury to another or by commit *741 ting an assault with a firearm.”). In its brief, the State contends that “second-degree felony murder [predicated on first-degree assault [with a] firearm [] should not demand foreseeability of death as an additional element beyond the very use of the” firearm. The State argues that, “[i]f a felony is inherently dangerous ..., what the defendant did or did not subjectively foresee is irrelevant.”
At trial, the circuit court instructed the jury on both forms of first-degree assault: the “intent to cause serious physical injury” form and the “firearm” form. Without specifying the form of first-degree assault, the prosecutor announced the State’s intent to prosecute Jones for second-degree felony murder predicated on first-degree assault.
With respect to first-degree assault with a firearm, the Majority concludes only that “[flirst-degree assault, either intent to inflict serious physical injury or assault with a firearm, cannot, as a matter of law, serve as the underlying felony to support felony murder.” Maj. Op. at 708, 155 A.3d at 508. The Majority makes no distinction between first-degree assault with the intent to cause serious physical injury and first-degree assault with a firearm. This is wrong.
Addressing the elements of felony murder, MPJI-Cr 4:17.7.2(B) provides, as to second-degree felony murder predicated on the “inherently dangerous manner in which [the] felony was perpetrated”:
[T]o convict the defendant of second[-]degree felony murder, the State must prove: (1) that [[the defendant] [another participating in the crime with the defendant]] [[committed] [attempted to commit]] (identify the crime), a felony; (2) that the way in which (identify the crime) was committed or attempted, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death; (3) that[,] as a result of the way in which (identify the crime) was committed or attempted, (name) was killed; and (4) that the act resulting in the death of (name) occurred during the [commission] [attempt *742 ed commission] [escape from the immediate scene] of the (identify the crime).
(Some brackets in original) (paragraph breaks and underlining omitted). The “Notes on Use” accompanying MPJI-Cr 4:17.7.2 state:
Use Part A of this instruction if the defendant is charged with second[ ]degree felony murder and the predicate felony is first[-]degree assault under [CR] § 3—202(a)(1)[, ie., first-degree assault with the intent to cause serious physical injury].
Use Part B of this instruction if the defendant is charged with second[ ]degree felony murder and the predicate felony is one that is inherently dangerous to human life because of the way in which it was committed.
In other words, second-degree felony murder predicated on first-degree assault with a firearm, although not covered by MPJI-Cr 4:17.7,2(A), is covered by MPJI-Cr 4:17.7.2(B), as the Court of Special Appeals recognized. The Maryland Criminal Pattern Jury Instruction on first-degree assault states in pertinent part:
[T]o convict the defendant of first[-]degree assault, the State must prove all of the elements of second[-]degree assault[,] and also must prove that: (1) the defendant used a firearm to commit assault; or (2) the defendant intended to cause serious physical injury in the commission of the assault.
MPJI-Cr 4:01.1 (paragraph breaks omitted). In turn, the Maryland Criminal Pattern Jury Instruction on the battery form of second-degree assault states in pertinent part:
[T]o convict the defendant of [the battery form of second-degree] assault, the State must prove: (1) that the defendant caused [offensive physical contact with] [physical harm to] (name); (2) that the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) that the contact was [not consented to by (name) ] [not legally justified].
MPJI-Cr 4:01(C) (some brackets in original) (paragraph breaks and underlining omitted).
*743 Synthesizing the relevant parts of the Maryland Criminal Pattern Jury Instructions on second-degree felony murder predicated on first-degree assault with a firearm (ie., second-degree felony murder predicated on a felony that was perpetrated in an inherently dangerous manner), first-degree assault, and the battery form of second-degree assault reveals that the elements of second-degree felony murder predicated on first-degree assault with a firearm are as follows. To convict the defendant of second-degree felony murder predicated on first-degree assault with a firearm, the State must prove that: (1) the defendant committed a first-degree assault with a firearm; (2) the way in which the first-degree assault with a firearm was committed, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death; (3) the defendant killed the victim; and (4) the act that resulted in the victim’s death occurred during the first-degree assault with a firearm. To convict the defendant of first-degree assault with a firearm, the State must prove that: (1) the defendant used a firearm to cause physical harm to the victim; (2) the physical harm was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the physical harm was not consented to by the victim or legally justified.
As the Court of Special Appeals did, I would determine that the way in which the first-degree assault with a firearm was committed in this case, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death. Indeed, as the Court of Special Appeals concluded: “[A] first-degree assault is committed in a manner that is ‘dangerous to life’ and ‘made death a foreseeable consequence’ when it is committed by using a firearm to shoot the victim multiple times, including twice in the head.” Jones, 222 Md.App. at 616, 114 A.3d at 265 (citations omitted). Nonetheless, that is not the end of the inquiry.
Comparing the elements of second-degree specific-intent murder to the elements of second-degree felony murder predicated on first-degree assault with a firearm yields the unavoid *744 able determination that second-degree specific-intent murder has the unique element of intent to kill or inflict such serious bodily harm that death would be the likely result, and second-degree felony murder predicated on first-degree assault with a firearm has the unique element of use of a firearm. And, second-degree felony murder predicated on first-degree assault with a firearm does not have the same intent element as second-degree specific-intent murder, as second-degree felony murder predicated on first-degree assault with a firearm does not require that the defendant intend to cause a reasonably foreseeable risk of death or of serious physical injury likely to result in death, but rather requires that the way in which the first-degree assault with a firearm was committed, under all of the circumstances, created a reasonably foreseeable risk of death or of serious physical injury likely to result in death.
In other words, the reasonable foreseeable risk of death is an element that depends on the way in which the first-degree assault with a firearm was committed, under all of the circumstances; the defendant need not have intended to create a reasonable foreseeable risk of death, or, as is required for second-degree specific-intent murder, intended “to kill or ... inflict such serious bodily harm that death would be the likely result[.]” MPJI-Cr 4:17(B). Second-degree felony murder predicated on first-degree assault with a firearm, while encompassing the element that the use of the firearm created a reasonably foreseeable risk of death, does not require that the defendant have had the requisite intent for second-degree specific-intent murder, and includes the unique element that the offense be committed with a firearm. Thus, second-degree specific-intent murder and second-degree felony murder predicated on first-degree assault with a firearm do not have the same elements and are not the same offense.
Double Jeopardy
I would conclude that, if a jury acquits a defendant of second-degree specific-intent murder and hangs on first-degree felony murder, the Double Jeopardy Clause does not bar the State from prosecuting the defendant for second-degree felony murder predicated on first-degree assault.
*745 In sum, the State prosecuting Jones for second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury does not implicate the Double Jeopardy Clause because that form of murder is a lesser-included offense of second-degree specific-intent murder; in other words, here, the jury acquitted on a greater-inclusive offense (namely, second-degree specific-intent murder) and hung on a lesser-included offense (namely, second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury). And, the State prosecuting Jones for second-degree felony murder predicated on first-degree assault with a firearm does not implicate the Double Jeopardy Clause because its elements are not the same as those of second-degree specific intent murder. For the reasons above, I would conclude that the State may prosecute Jones for second-degree felony murder predicated on first-degree assault.
For the above reasons, respectfully, I dissent.
Judge Greene and Judge Battaglia have authorized me to state that they join in this opinion.

. The instant appeal cannot be based on the two exceptions to the final judgment rule other than the collateral-order doctrine. The instant appeal does not involve Maryland Rule 2-602, which is part of Title 2 (Civil Procedure—Circuit Court) and applies only to civil cases. Nor does the instant appeal involve a statute other than CJP § 12-301 that allows appeals. The two such statutes that arise most often are CJP §§ 12-302(c) and 12-303, As does Maryland Rule 2-602, CJP § 12-303 applies only to civil cases. See CJP § 12-303 ("A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case[,]”). CJP § 12-302(c) allows the State, not the defendant, to appeal certain orders in a criminal case. See CJP § 12-302(c)(l) ("In a *711 criminal case, the State may appeal as provided in this subsection.”). Here, Jones, not the State, was the appellant; the circuit court denied the motion to dismiss, and Jones appealed.

. The charge for second-degree felony murder remains because the circuit court granted Jones’s motion for judgment of acquittal as to first-degree felony murder, and found that, at a new trial, the State could prosecute Jones for second-degree felony murder predicated on first-degree assault.

. Presumably, Jones’s counsel meant to assert that, under Roary, every first-degree assault that results in the victim's death would be a felony murder.

. In Houghton v, Forrest, 412 Md. 578, 587, 989 A.2d 223, 228-29 (2010), this Court stated: "[I]f experience demonstrates that it is unrealistic or unwise to enforce a rule in the form expressed by this Court, then it may be modified for practical reasons.” (Citing Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 854-55, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). In turn, in Casey, 505 U.S. at 854, 112 S.Ct. 2791, while discussing stare decisis, the Supreme Court stated: "[W]e may ask whether the rule has proven to be intolerable simply in defying practical workability[.]” (Citation omitted). In Houghton, 412 Md. at 588, 989 A.2d at 229, this Court declined a party’s request to overrule certain precedents; thus, this Court’s reference to "practical reasons” was dicta.

. See Kata Amara, Annapolis homicide rates soar, WBAL-TV 11 (Oct. 3, 2016), available at http://www.wbaltv.com/news/annapolis-homicide-rates-soar/41939246[https://perma,cc/JS5N-CDSH],

. Jones and the Court of Special Appeals disagree on the issue of whether second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault. The Court of Special Appeals reasoned that second-degree specific-intent murder is a lesser-included offense of second-degree felony murder predicated on first-degree assault because the latter form of murder has the “additional element” of first-degree assault. Jones, 222 Md.App. at 619, 114 A,3d at 266. At oral argument, Jones disagreed with the Court of Special Appeals’s reasoning that there was a “greater/lesser relationship^]” and instead posited that the two forms of murder were "the same offense.” In any event, Jones and the Court of Special Appeals agree that "intent to inflict such serious bodily harm that death would be the likely result” is the equivalent of "intent to cause serious physical injury.” As discussed above, I disagree and conclude that second-degree felony murder predicated on first-degree assault with the intent to cause serious physical injury is a lesser-included offense of second-degree specific-intent murder—not the other way around, as the Court of Special Appeals reasoned.

. Hemophilia is "a serious disease that causes a person who has been cut or injured to keep bleeding for a very long time[,]” Hemophilia, Merriam-Webster, http://www.merriam-webster.com/dictionaiy/ hemophilia [https://perma.cc/C9P3-X786].

. In Jones, 222 Md.App. at 611, 114 A.3d at 262, in its discussion of the elements of second-degree specific-intent murder, the Court of Special Appeals quoted parts of Thornton, 397 Md. at 730-31, 713, 919 A.2d at 693-94, 683. Significantly, however, the Court of Special Appeals failed to note that, in Thornton, id. at 728, 919 A.2d at 692, this Court stated: "The requisite mental state for [second-degree specific-intent murder] is distinct from the requisite mental state for [first-degree] assault[.]”